**STATE of Alaska, DEPARTMENT OF REVENUE, Appellant/Cross–Appellee,**

**v.**

**Martha ANDRADE (Barahona) and Belly Willman Barahona, individually, and for their minor children Jonathan Barahona and Willman Barahona; Shelly Edwards–Pigeon and Christopher Pigeon, individually and for their minor children, Jessica Edwards–Pigeon and Zoe Edwards–Pigeon; Janna Lelchuk, individually and for her minor children, Andrei Khmelev and Anton Khmelev; Alexander Ladutko; Ya Haddy Touray and Adanan Touray, individually and for their minor children, Haita Touray, Mufa Touray, Yagga Touray and Bintou Touray; and the foregoing as representatives of the class, Appellees/Cross–Appellants.**

Nos. S–9329, S–9339.

Supreme Court of Alaska.

May 25, 2001.

---

Stephen C. Slotnick, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellant/Cross–Appellee.

Margaret D. Stock and Jeffrey Scott Moeller, Stock & Moeller, Anchorage, for Appellees/Cross–Appellants.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

We addressed the constitutionality of exclusion of illegal aliens from permanent fund dividend (PFD) eligibility in *State, Department of Revenue, Permanent Fund Dividend Division v. Cosio.*[1] We suggested in *Cosio* that there may be a class of legal aliens that has a valid constitutional challenge as to eligibility for a permanent fund dividend. This case presents that challenge and asks whether the language of AS 43.23.005(a)(5)(B), which restricts alien PFD eligibility to those who are "lawfully admitted for permanent residence in the United States," constitutes a violation of the Supremacy Clause and federal and state Equal Protection.

Martha Andrade, Belly Willman Barahona, and their two children were denied PFDs in 1996 because the Department of Revenue (department) determined that Andrade and Barahona could not legally form the intent to remain in Alaska indefinitely based on their

---

1. 858 P.2d 621, 628 n. 7, 8 (Alaska 1993).

immigrant status. They appealed the denial and, at the same time, commenced a class action challenging the constitutionality of the PFD eligibility statute, AS 43.23.005(a).

As to the constitutional challenges, we conclude that the alien eligibility requirement of AS 43.23.005(a)(5)(B) is constitutional because the department has the authority to interpret the statutory language in a manner that meets the purposes of the PFD program and that comports with federal law. We therefore reverse the superior court's decision on this issue.

However, it is undisputed that the now-repealed implementing regulation that was in effect when this action was commenced was unconstitutional. We therefore affirm the superior court's grant of summary judgment to the class insofar as it enjoined any conduct that improperly excluded otherwise eligible legal aliens.

The state challenges the dismissal of its defense that the class failed to exhaust administrative remedies. Because it would have been futile for class members to apply for a PFD, we hold that the superior court did not abuse its discretion when it dismissed the exhaustion of administrative remedies defense. The state also challenges the superior court's certification of the class. We conclude that the requirements of class certification were satisfied in this case and that the superior court did not abuse its discretion in allowing this matter to proceed as a class action.

Finally, the class challenges the superior court's rejection of its claim that the eligibility requirement for legal aliens amounts to national origin discrimination under the Alaska Human Rights Act. Because any exclusion of legal aliens is based on their ability to form the requisite intent to remain rather than on the country of the applicants' or their ancestors' origin, we affirm the superior court's denial of the class motion for summary judgment on the national origin discrimination claim.

**2.** Andrade and the children applied for and re-

## II. FACTS AND PROCEEDINGS

### A. Facts

This matter involves various named plaintiffs who are aliens legally present in the United States and currently residing in Alaska.

#### 1. The Andrade/Barahona family

Martha Andrade was born in Mexico and entered the United States as a nonimmigrant visitor in 1991. She was authorized to stay in the United States until July 13, 1991, but stayed beyond that date. Andrade moved to Alaska in 1994. She has been a lawful permanent resident of the United States since June 30, 1995.

Belly Willman Barahona is Andrade's husband. He entered the United States in 1988 and filed for asylum in 1993. He moved to Alaska in 1994 and had not been granted asylum or permanent resident status at the time he applied for the 1996 PFD.

Willman and Jonathan Barahona are the sons of Andrade and Barahona. Willman was born in California in 1991; Jonathan was born in Alaska in 1994.

#### 2. Other class members

The remainder of the named plaintiffs are legal aliens, or children of legal aliens, residing in Alaska. Some have sought asylum; others have valid visas. Some of the children were born in the United States. Like the Andrade/Barahona family, these plaintiffs have either had their permanent fund applications denied based on their immigrant/nonimmigrant status or were ineligible.

### B. Proceedings

#### 1. The Andrade/Barahona 1996 PFD application and appeal to the Department of Revenue

The Andrade/Barahona family (Andrade family) applied for PFDs in 1996 but their applications were denied.[2] Andrade's application was denied because she was not a resident alien with permanent status before January 1, 1995. Belly Barahona's applica-

ceived dividends in 1997 and 1998.

tion was denied because he was not granted permanent resident status, refugee status, or asylum before January 1, 1995. The children's applications were denied because their sponsor, Andrade, was found ineligible for the dividend. The family requested informal conference appeals of their denials; the denials were affirmed.

The Andrade family appealed the informal conference decisions to the department. The Permanent Fund Division (division) of the Department of Revenue filed a motion for summary adjudication, which was granted. The division argued that under AS 43.23.005(a)(5) and its implementing regulations, the family members were unable to receive dividends. The Andrade family argued that the denials violated both the United States and the Alaska Constitutions.

The department upheld the denial of the dividends. Regarding the family's constitutional challenges, the hearing examiner stated that he did "not have the authority to declare state law invalid. The Applicants will have to pursue their legal argument[s] in court." The Senior Revenue Hearing Examiner adopted the decision of the hearing examiner.

### 2. *The superior court proceedings*

Andrade and Barahona filed a combined "Complaint for Declaratory and Injunctive Relief and Damages and Appeal of Final Administrative Decision" in the superior court on behalf of themselves, as representatives of their children, and as representatives of the class. The complaint alleged that the department's denial of the family members' 1996 permanent fund applications violated the Equal Protection Clause of both the United States and Alaska Constitutions, as well as the Supremacy Clause of the United States Constitution. On behalf of the class, Andrade and Barahona alleged that the department "has systematically discriminated in favor of certain categories of United States citizens over other categories of United States citizens; and has systematically discriminated in favor of certain categories of legal aliens over other categories of legal aliens." The complaint asserted that such "actions are illegal and unconstitutional in

that they are inconsistent with the federal government's plenary power over matters of immigration and naturalization, and constitute a violation of the Equal Protection Clauses of both the Alaska and the United States Constitutions and the Supremacy Clause of the United States Constitution."

The complaint asked for the following relief: (1) a declaration that the relevant actions of the department are illegal; (2) a preliminary and/or permanent injunction ordering the cessation of such illegal conduct; (3) an award of damages in an amount to be proved at trial; and (4) attorney's fees, costs, and interest. The complaint also asserted that a class should be certified consisting of aliens legally "present in the United States who have been denied, or have been deemed ineligible for, Permanent Fund Dividends based on their alien status and all U.S. citizens who have been denied, or been deemed ineligible for, Permanent Fund Dividends based on the alien status of their parents or guardians."

### a. *The October 14, 1998 superior court order certifying the class and entering partial summary judgment*

The state filed a motion for partial summary judgment, arguing that all parties, except the Andrade family, should be dismissed from the action because the other parties either waived their interests or failed to exhaust their administrative remedies. As such, the state argued that Andrade's request for class certification should be denied. The state also argued that only prospective relief should be available.

Andrade later filed a motion to certify the class and a cross-motion for partial summary judgment on the failure to exhaust and prospective relief issues.

Superior Court Judge Michael L. Wolverton issued an order that certified the class and entered partial summary judgment in favor of the plaintiffs. Judge Wolverton found that the class met each of the requirements of Civil Rule 23(a), and certified the matter as a class action under Civil Rule 23(b)(1)(B) and (b)(2). The class was certified to consist "of all persons lawfully resid-

ing in Alaska, who are or in the past have been otherwise qualified to receive a PFD, but who were denied or otherwise ineligible to receive a PFD because of their (or in the case of minors, their sponsor's) alienage." The class as certified did not include any illegal aliens.

Judge Wolverton also entered partial summary judgment: (1) dismissing the state's claim that the class failed to exhaust administrative remedies, stating that "[t]he court finds that the plaintiffs were facially ineligible for PFDs and that pursuing the application process could not have changed that outcome"; and (2) "dismissing the State's request for purely prospective relief."

The superior court denied the state's motion for reconsideration. We denied the state's petition for review without comment.

### b. *The July 21, 1999 superior court order granting partial summary judgment*

The Andrade class moved for summary judgment in March 1999, seeking to have AS 43.23.005(a)(5) declared unconstitutional and its enforcement enjoined. The class also sought retroactive relief for national origin discrimination under the Alaska Human Rights Act.[3]

The state filed a cross-motion for summary judgment, again arguing that the lawsuit was functionally an administrative appeal, and that the case should be dismissed because the plaintiffs had failed to exhaust their administrative remedies. On July 21, 1999, Superior Court Judge Eric T. Sanders granted partial summary judgment to the Andrade class. The relevant superior court rulings are described briefly.

### i. *Supremacy Clause*

First, the superior court concluded that under the Supremacy Clause, a state cannot determine which legal aliens have the requisite intent to remain in the United States in a manner that conflicts with federal authority in this area. The court found that AS

43.23.005(a)(5) excludes certain legal aliens from PFD eligibility "on the basis that their immigration status is inconsistent with having the requisite intent to remain an Alaska resident indefinitely." The superior court then concluded that the statute conflicted with the Supremacy Clause and enjoined the state "from enforcing the statute as well as any regulations that prevent legal aliens from being eligible for a PFD, unless the federal government has precluded that category of aliens from forming the intent to remain in the United States."

### ii. *Equal protection*

Next, the superior court ruled that the statute violated the Equal Protection Clauses of both the United States and the Alaska Constitutions. The court noted that alienage is a suspect class that triggers strict scrutiny under the federal constitution and heightened scrutiny under Alaska law. Because the state did not articulate a compelling interest, the court concluded that the statute violated both the United States and Alaska Constitutions.

### iii. *National origin discrimination*

The court concluded that the PFD eligibility statute, AS 43.23.005(a)(5), did not facially discriminate on the basis of national origin, but rather on the basis of citizenship. Because the court found that the statute does not discriminate against a category protected in AS 18.80.255, the court concluded that the plaintiffs are not entitled to either damages or back dividends.[4]

### c. *Motion for attorney's fees*

The class moved for an award of attorney's fees "between $115,144.20 and $259,074.45," stating that these figures constituted 120% and 270% of the class's actual fees, respectively. The state notes that this motion was pending in the superior court at the time of this appeal.

---

3. *See* AS 18.80.255; AS 22.10.020(i).

4. The court also noted that the Andrade family's request to be awarded 1996 dividends presented disputed questions of fact, and was therefore

inappropriate for summary judgment. The court later remanded the Andrade family's claims back to the department.

### 3. *This appeal*

The state appeals (1) the dismissal of the failure to exhaust administrative remedies defense, (2) class certification, and (3) the constitutional rulings. The class cross-appeals the ruling on national origin discrimination.

## III. *STANDARD OF REVIEW*

■ We review for abuse of discretion a superior court's decision regarding whether a party has exhausted the administrative remedies available or whether that party's failure to exhaust remedies should be excused.[5] However, "the court's determination whether the doctrine of exhaustion of administrative remedies applies to a particular action is a question of law, which we review *de novo*."[6] A grant of summary judgment is reviewed *de novo*.[7]

■ We have not previously decided the standard for reviewing a court's certification of a class. The class asserts that class certifications are subject to abuse of discretion review; the state suggests that such certifications are subject to *de novo* review. We have used the abuse of discretion standard in reviewing class action decisions in our review of a superior court's decision on a motion to amend a class certification order to redefine the class,[8] and in reviewing a superior court's approval of a class action settlement under Civil Rule 23(e).[9] The language of Alaska Rule of Civil Procedure 23 is discretionary,

providing that "[a]n action *may* be maintained" when the rule's requirements are met.[10] In addition, the Alaska class action rule is almost identical to the federal rule.[11] Under the federal standard, a district court's decision to certify a class is reviewed for an abuse of discretion.[12] All of these factors lead us to conclude that we should review the decision to grant or deny class certification under the abuse of discretion standard.

■ We apply our independent judgment to questions of constitutional law [13] and review *de novo* the construction of the Alaska and federal Constitutions.[14] The interpretation of statutes is reviewed *de novo* and we adopt the rule of law "that best reflect[s] precedent, reason, and policy." [15]

## IV. *DISCUSSION*

A. *The Superior Court Did Not Err When It Dismissed the State's Failure to Exhaust Administrative Remedies Defense.*

The state objects to the appeal process used by the Andrade family and to the dismissal of the state's defense that the class failed to exhaust administrative remedies.

1. *The Andrade/Barahona appeal was procedurally proper as a declaratory judgment action.*

■ The state contends that the Andrade family's appeal was procedurally flawed by

---

5. *See State v. Beard*, 960 P.2d 1, 5 (Alaska 1998); *Broeckel v. State, Dep't of Corrections*, 941 P.2d 893, 896 n. 2 (Alaska 1997).

6. *State, Dep't of Transp. and Pub. Facilities v. Fairbanks North Star Borough*, 936 P.2d 1259, 1260 n. 3 (Alaska 1997).

7. *See Meyer v. State, Dep't of Revenue, Child Support Enforcement Div., ex rel. N.G.T.*, 994 P.2d 365, 367 (Alaska 1999).

8. *See Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1330 (Alaska 1997).

9. *See Weiss v. State*, 939 P.2d 380, 386 (Alaska 1997).

10. Alaska R. Civ. P. 23(b) (emphasis added).

11. *See* Fed.R.Civ.P. 23 (with the exception of section (f) of the federal rule, which is not includ-

ed in the Alaska rule and which allows discretionary appeal of a district court order granting or denying class action certification).

12. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (district courts have broad discretion to certify and decertify a class); *see also Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir.1990); *see also* 5 Jerold S. Solovy et al., *Moore's Federal Practice* § 23.04 (3d ed.2000).

13. *See Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.*, 991 P.2d 202, 206 (Alaska 1999).

14. *See Waiste v. State*, 10 P.3d 1141, 1144 (Alaska 2000).

15. *Id.; accord Brown v. Brown*, 983 P.2d 1264, 1267 (Alaska 1999).

its failure to file a notice of appeal or a statement of points on appeal in the superior court.[16] The state also argues that one action cannot be both an administrative appeal and a complaint for damages. It contends that the actions must be filed separately, after which the plaintiffs could have moved to consolidate if desired. Failure to file separately was "a flouting of the rules of procedure."

The Andrade family responds that it did file a timely appeal of the department's decision in the superior court. And the class contends that its action was a direct class action in which it sought declaratory judgment as to the constitutionality of AS 43.23.005(a) and the statute's implementing regulations. Thus, both the Andrade family and the class argue that appellate procedures were unnecessary.

The superior court record does not contain a notice of appeal or a statement of points on appeal. However, once the matter was before the court as an original class action challenging the constitutionality of a statute, the class was not required to submit these documents. As an appeal of an administrative decision, the case required a notice of appeal and points on appeal. But as a declaratory judgment action, this would be unnecessary.[17] Although the Andrade family's procedural path is somewhat irregular, we find that the failure to follow appellate rules does not render this action invalid because the appeal was combined with a declaratory judgment and class action.

 2. *Exhaustion of administrative remedies was not required of the other class members.*

The state argues that the class plaintiffs, other than the Andrade family, should be dismissed for failure to exhaust administrative remedies. Only the Andrade family individually may appeal, the state reasons, because only the Andrade family exhausted its administrative remedies.

The class contends that the department's stated inability to decide the constitutional challenge raised by the Andrade family is one of the reasons why it is futile for some nonrestricted legal aliens to apply for a PFD. The class argues that it is not required to go through either the application or appeal process in order to challenge the constitutionality of a state benefit for which it is statutorily ineligible.

█ We have stated that the requirement of exhaustion of administrative remedies "turns on an assessment of the benefits obtained through affording an agency an opportunity to review the particular action in dispute."[18] Allowing the agency to make a factual record, apply its expertise, and make corrections to its own errors provides the agency the opportunity to "perform functions within its special competence" and may moot judicial controversies.[19] Application of the discretionary doctrine of exhaustion of administrative remedies requires a determination of the following: (1) whether exhaustion of remedies is required; (2) whether the complainant exhausted those remedies; and (3) whether the failure to exhaust remedies is excused.[20]

█ We have cautioned trial courts "not to entertain legal or constitutional claims which have been severed from the remainder of a controversy otherwise subject to the doctrine of administrative exhaustion."[21] However, we have stated that "where a controversy involves only constitutional [issues], and no factual issues, the exhaustion doctrine may

---

16. *See* Alaska R.App. P. 602(c)(1).

17. *See* Alaska R. Civ. P. 57; *see also Jefferson v. Asplund,* 458 P.2d 995, 999 (Alaska 1969) ("[A]ll that is required of a complaint seeking declaratory relief is a simple statement of facts demonstrating that the superior court has jurisdiction and that an actual justiciable case or controversy is presented.").

18. *Mt. Juneau Enters. v. City of Juneau,* 923 P.2d 768, 776 (Alaska 1996) (quoting *Ben Lomond v.*

*Municipality of Anchorage,* 761 P.2d 119, 121 (Alaska 1988)).

19. *Id.* at 777.

20. *See id.*

21. *Standard Alaska Prod. Co. v. State, Department of Revenue,* 773 P.2d 201, 207 (Alaska 1989) (internal quotation marks omitted).

be held not to apply."[22] Where a claim "calls upon the superior court to review only the validity of a statute, exhaustion of administrative remedies is not required."[23]

■ Exhaustion is excused in this case because the refusal of the department to address the Andrade family's constitutional challenge rendered pursuit of administrative relief futile. The Andrade family was informed, in summary adjudication, that the department could not decide the constitutional challenge. The superior court granted partial summary judgment dismissing the state's "failure to exhaust administrative remedies" defense because it found that "the plaintiffs were facially ineligible for PFDs and that pursuing the application process could not have changed that outcome." And, in any event, once the superior court certified the class and notice was given to the absent class members, the pursuit of administrative remedies was unnecessary if not futile.[24] We therefore affirm the dismissal of the exhaustion of administrative remedies defense.[25]

### B. Class Certification Was Proper.

■ The superior court certified the class finding that the requirements of Civil Rule 23(a) and (b)(1) were met, or in the alternative, that under Rule 23(b)(2) the department had acted or refused to act on grounds generally applicable to the class thus making declaratory and/or injunctive relief appropriate to the class.

The state argues that class certification was improper because, in addition to the need for individual exhaustion of administrative remedies, the class did not meet the requirements of the class action rule. The state also contends that where constitutionality is at issue, class certification is unnecessary because the court's ruling on an appeal of an administrative decision would affect similarly situated persons in the same manner.[26]

The class argues that the issue to be resolved by the superior court for class purposes was not individual class members' ultimate eligibility for a PFD in any given year; rather, the class sought declaratory and injunctive relief as to a threshold question of eligibility that exists based on the federally imposed immigration status of the class members.

The threshold requirements of numerosity, commonality, typicality, and protection of class interests by the representative were met in this case.[27] First, the superior court found that the class was so numerous that joinder would be impracticable. There are at least twenty named plaintiffs. In addition, counsel for the class asserts that there are potentially hundreds of others who are either similarly situated or will be affected by the case.

Second, resolution of the constitutional issues is a concern common to the class members.[28] In its action for declaratory/in-

22. *Id.*

23. *State, Dep't of Transp. and Pub. Facilities v. Fairbanks North Star Borough*, 936 P.2d 1259, 1261 (Alaska 1997).

24. Indeed, in this case the hearing examiner declined to consider the family's constitutional challenges on the ground that he "did not have the authority to declare state law invalid." He directed the appellees to "pursue their legal argument in court."

25. Much of the force of the state's argument concerning class certification and exhaustion has been dispelled by the court's ruling that "back dividends" will not be awarded. (The Andrade family's claims from 1996 forward are not governed by this ruling because their claims are timely.) The State expresses particular concerns about the "doctrine of finality" and the statutory application requirement of AS 43.23.005(a)(1),

and a more general concern about the need for a factual context for each applicant. These arguments would have more weight if back dividends were to be awarded. Because they will not be awarded, neither the doctrine of finality nor the application requirement will be violated in so far as these legal rules apply to activity prior to the filing of the complaint. Further, the factual context needed for an individual award can be supplied before awards on timely claims are made.

26. The state also argues that because the relief sought was back dividends, only an individual should bring the claim. However, the superior court did not address any individual claims.

27. *See* Alaska R. Civ. P. 23(a).

28. Alaska R. Civ. P. 23(b)(3) provides, in part, that a class action may be maintained if "[t]he court finds that the questions of law ... common

junctive relief, the class claims that the department "systematically discriminated in favor of certain categories of legal aliens" and that this practice is unconstitutional. The class was certified to consist of lawful residents of Alaska who were denied or deemed ineligible to receive a PFD because of their alienage (or their parents' alienage). The questions presented predominate over any individual claims and are common to the class.

Third, the superior court found the claims of the representative parties to be typical of the class members. This finding is supported by the record.

And fourth, the superior court found that the representative parties would fairly and adequately represent the class members. The state argues that "[w]here the constitutionality of a statute is at issue, the need for a class action loses vitality," citing to *State v. Alex.*[29] But *Alex* did not hold that the concern for adequate representation disappears when the class action challenges the constitutionality of a statute. It merely accorded less weight to that factor in these circumstances. And it did note that failure to proceed on a class action basis would "mean that the named plaintiffs would be burdened with the expenses of the suit without reimbursement from a class recovery. The effect on the defendants and the rest of the class is the same whether the suit is brought as a class or as an individual action."[30] The superior court's finding that the Andrades' representation was adequate for this constitutional challenge was not clearly erroneous, and was entitled to some weight in class certification. Thus, the Rule 23(a) class certification requirements were satisfied.

The state contends that the sole reason the class attorneys brought the class action was to generate additional attorney's fees and that this is not an appropriate reason to certify a class. There is no evidence that the court certified the class because it would generate plaintiffs' attorney's fees. However, certification of the class does change the landscape with regard to the calculation of attorney's fees because of the possibility of higher fee awards than in an individual action. Factors considered in determining the compensable value of class counsel's services include "the need to promote the efficient use of court resources through the use of class action litigation, and the potential difficulty of attracting capable counsel."[31] These factors adequately protect against the possibility of abusing the class action mechanism to generate attorney's fees, and thus, we reject the state's argument.

Additionally, declaratory or injunctive relief is appropriate in this case because the department refused to address the constitutional claims of the Andrade family.[32] There is no general prohibition against bringing a class action to declare a statute unconstitutional, and we do not find one in this case. We conclude that the superior court did not abuse its discretion by certifying the class.

C. *The PFD Eligibility Requirement of AS 43.23.005(a)(5)(B), that Legal Aliens be "Lawfully Admitted for Permanent Residence in the United States," Is Constitutional.*

1. *Introduction*

The superior court determined that the PFD eligibility requirement for legal aliens found in AS 43.23.005(a)(5)(B), of being "lawfully admitted for permanent residence in the United States," is unconstitutional under the Supremacy Clause and under federal and state equal protection because it impermissibly excludes legal aliens who are not precluded under federal law from forming the intent to remain here indefinitely. We disagree.

The ability to form the necessary intent to remain is the focal point of this dispute because in order to be eligible for the PFD, Alaska residents are required to have an

to the members of the class predominate over any questions affecting only individual members."

29. 646 P.2d 203, 214 (Alaska 1982).

30. *Id.*

31. *Id.* (internal quotation marks omitted).

32. *See* Alaska R. Civ. P. 23(b)(2).

intent to remain in Alaska.[33] Not all aliens are able to form that intent because of the restrictions of their immigrant status; depending on an alien's immigrant status, federal immigration law can place restrictions on an alien's ability to intend to remain.[34] Some aliens are allowed in the country only if they do not intend to abandon a foreign residence.[35] These restricted aliens jeopardize their legal presence in the country and may be deported if they intend to seek to abandon their foreign residence and establish domicile in this country.[36] Other aliens are not so restricted because their status does not preclude them from intending to remain in the United States.[37] Thus, nonrestricted aliens are able to form the intent to remain in Alaska without jeopardizing their legal alien status, but restricted aliens cannot.

The class contends that because AS 43.23.005(a)(5)(B) uses the same language as a term defined in the federal immigration statutes ("lawfully admitted for permanent residence in the United States"), it must incorporate the federal definition. If that contention is true, the parties agree that the statute is unconstitutional because aliens who are not precluded from forming the intent to remain (under federal law) are excluded from PFD eligibility (under state law). This exclusion would result in discrimination on the basis of alienage and the imposition of a burden unsanctioned by Congress.

 We conclude, however, that the Alaska statute does not incorporate the federal definition. We agree with the state's contention that it can construe AS 43.23.005(a)(5)(B)'s language more broadly than the federal definition of the same language and in a manner that comports with constitutional requirements. There is no requirement that similar state and federal statutory terms must be governed by one federal definition. The state and federal statutes in question regulate different areas and have different purposes. In addition, we have accorded the department broad authority to determine PFD eligibility and to define the statutory terms of the PFD program. There is every indication that the department is trying to define the statute in a manner that includes those legal aliens who can form the requisite intent to remain here. We have previously held that state residency requires both physical presence and an intent to remain indefinitely,[38] and we do so here as well. The term "an alien lawfully admitted for permanent residence in the United States" should be construed as incorporating these two requirements inherent in Alaska residency: legal presence and an intent to remain indefinitely.

As discussed in greater detail below, we hold that AS 43.23.005(a)(5)(B) does not violate the Supremacy Clause because: (1) it does not regulate immigration; (2) Congress has not precluded state regulation of aliens for state economic benefits such as the PFD program; (3) the statute does not stand as an obstacle to the full accomplishment of the purposes and goals of Congress in regulating immigration; and (4) it does not discriminate against or impermissibly burden aliens. We also hold that the statute does not violate equal protection because there is no discriminatory action under the statute. However, we agree that the now-repealed regulation, which was in effect when this action was commenced, was unconstitutional. Because there is no regulation currently in effect, we will not reach the question of whether the expired emergency regulation is valid.

As background to these conclusions, we first discuss the applicable statute and regu-

33. *See* AS 43.23.005 (providing that state residency is required for permanent fund dividend eligibility); AS 01.10.055 (defining state residency as physical presence with intent to remain); 15 Alaska Administrative Code (AAC) 23.143 (2001) (discussing intent to remain requirement).

34. *See Elkins v. Moreno,* 435 U.S. 647, 665, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978).

35. *See id.*

36. *See id.* at 666, 98 S.Ct. 1338.

37. *See id.*

38. *See Perito v. Perito,* 756 P.2d 895, 898–99 (Alaska 1988) (interpreting "intent to remain permanently" as requiring an intent to remain indefinitely, "[o]therwise it is likely that a large percentage of Alaskans would not be considered residents, since many intend to retire elsewhere.").

lations, the presumption of constitutionality, the broad authority granted to the department to administer the program especially with regard to determining PFD eligibility and defining terms, the ability of aliens to form the requisite intent to remain, and the interpretation of the PFD eligibility statute, AS 43.23.005(a)(5).

### 2. *Statutory and regulatory background*

Alaska Statute 43.23.005(a) provides that:

An individual is eligible to receive one permanent fund dividend each year in an amount to be determined under AS 43.23.025 if the individual

(1) applies to the department;

(2) is a state resident on the date of application;

(3) was a state resident during the entire qualifying year;

(4) has been physically present in the state for at least 72 consecutive hours at some time during the prior two years before the current dividend year;

(5) is

(A) a citizen of the United States;

(B) an alien lawfully admitted for permanent residence in the United States;

(C) an alien with refugee status under federal law; or

(D) an alien that has been granted asylum under federal law; and

(6) was, at all times during the qualifying year, physically present in the state or, if absent, was absent only as allowed in AS 43.23.008.

At the time this lawsuit was filed, a regulation implementing subsection (a)(5) provided that some legal aliens who did not meet specific requirements based on their immigration status were not eligible for a PFD because the state determined they could not form the necessary intent to be domiciled in Alaska indefinitely.[39]

During the course of this litigation, the attorney general issued an informal opinion stating that former regulation 15 AAC 23.153 was unconstitutional because it conflicted with federal law by improperly excluding some legal aliens who were not precluded under federal law from forming the intent to remain required for PFD eligibility.[40] On June 4, 1999, the department then replaced that regulation with an emergency regulation that included a broader range of legal aliens within PFD eligibility.[41] The emergency

---

**39.** Former 15 AAC 23.153 (1999) provided that

(a) An alien who before January 1 of the qualifying year has been granted permanent resident status under 8 U.S.C. [§ ]1101(a)(20), refugee status under 8 U.S.C. [§ ]1157 and 8 U.S.C. 1159, or asylum under 8 U.S.C. [§ ]1158 and who otherwise qualifies is eligible for a dividend.

(b) An alien who has been granted conditional resident status meets the requirements of permanent resident status under (a) of this section.

(c) An alien who does not fall within the provisions of (a) or (b) of this section is not eligible for a dividend.

(d) A foreign-born child adopted by an eligible resident is not subject to this section.

**40.** 1999 Informal Op. Att'y Gen. 103, 105–07.

**41.** Emergency regulation 15 AAC 23.153 provided that

(a) For purposes of AS 43.23.005(a)(5)(B), an alien is considered lawfully admitted for permanent residence if the alien has

(1) an immigrant visa;

(2) a nonimmigrant visa that

(A) does not require that the alien has a homeland or residence other than the United States, and

(B) is not designated as temporary or does not limit the time that the alien may remain in the United States;

(3) been paroled indefinitely into the United States under 8 U.S.C. [§ ]1182(d)(5);

(4) been granted conditional residency;

(5) a properly filed application with the Immigration and Naturalization Service for an adjustment of status to permanent residency; or

(6) an immigration status under which the alien is otherwise considered to be domiciled in the United Status under federal law.

(b) Notwithstanding subsection (a) of this section, an alien is not eligible for a dividend if the alien is unlawfully present in the United States.

(c) For the purposes of AS 43.23.005(a)(3), an alien must be lawfully admitted for permanent residence in the United States, granted asylum under 8 U.S.C. [§ ]1158, or granted refugee status under 8 U.S.C. [§ ]1157 or 8 U.S.C. [§ ]1159 before becoming a state resident.

(d) An alien has the burden of proving that the alien is lawfully admitted for permanent resi-

regulation expired on October 1, 1999 because it was not made permanent by the Department of Revenue. According to the state, this regulation was allowed to expire because the superior court had declared AS 43.23.005(a) unconstitutional. The state asserts that if the superior court is reversed, the Department of Revenue "will re-adopt a similar regulation."

### 3. *Presumption of constitutionality*

"A party raising a constitutional challenge to a statute bears the burden of demonstrating the constitutional violation. A presumption of constitutionality applies, and doubts are resolved in favor of constitutionality." [42] The party attacking a statute has the burden to "negative every conceivable basis which might support it." [43] We recognize

the well-established rule of statutory construction that courts should if possible construe statutes so as to avoid the danger of unconstitutionality. We have alluded to this rule on many other occasions. It recognizes that the legislature, like the courts, is pledged to support the state and federal constitutions and that the courts, therefore, should presume that the legislature sought to act within constitutional limits.[44]

### 4. *The department has broad authority to administer the PFD program.*

The PFD is an economic benefit that Alaska residents are entitled to receive if they meet certain eligibility requirements. A threshold requirement is having the requisite intent to remain in Alaska, although other factors are used in determining eligibility.[45] The PFD program is designed, in part, to encourage the maintenance of Alaska residence and to reduce population turnover.[46]

The legislature delegated broad authority to the Department of Revenue to administer the PFD program. Alaska Statute 43.23.055 sets out the duties of the department and states in relevant part that the department shall "adopt regulations under [the Administrative Procedure Act] that establish procedures and time limits for claiming a permanent fund dividend." [47] The legislature also delegated power to the commissioner to "adopt regulations under the Administrative Procedure Act (AS 44.62) for determining the eligibility of individuals for permanent fund dividends." [48] The commissioner may also "use other information available from other state departments or agencies to determine the eligibility of an individual." [49] In addition, the commissioner "shall consider all relevant circumstances in determining the eligibility of an individual." [50]

We have held that AS 43.23.015(a) "requires the commissioner to adopt regulations setting substantive eligibility requirements for permanent fund dividends." [51] "One objective of [AS 43.23.015(a)] is to require the commissioner to make substantive regulations resolving questions as to who is and who is not a permanent resident" [52] and thus eligible for a PFD. We have repeatedly stated that "the residency requirement for PFD eligibility may differ from other residency

dence under this section. A work authorization permit is not proof that the alien is lawfully admitted for permanent residence.
(e) A foreign-born child adopted by an eligible resident is not subject to this section.

**42.** *Baxley v. State,* 958 P.2d 422, 428 (Alaska 1998).

**43.** *Katmailand, Inc. v. Lake and Peninsula Borough,* 904 P.2d 397, 401 (Alaska 1995) (quoting *Regan v. Taxation with Representation of Wash.,* 461 U.S. 540, 548, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983)).

**44.** *Kimoktoak v. State,* 584 P.2d 25, 31 (Alaska 1978) (footnote and citations omitted); *see also State v. Rice,* 626 P.2d 104, 108 (Alaska 1981).

**45.** *See* authorities cited *supra* n. 33.

**46.** *See State, Dep't of Revenue, Permanent Fund Dividend Div. v. Cosio,* 858 P.2d 621, 627 (Alaska 1993).

**47.** AS 43.23.055(2).

**48.** AS 43.23.015(a).

**49.** *Id.*

**50.** *Id.*

**51.** *Cosio,* 858 P.2d at 624.

**52.** *Id.* at 625; *see also Brodigan v. Alaska, Dep't of Revenue,* 900 P.2d 728, 732 (Alaska 1995).

requirements."[53] And we have concluded that "[t]he legislature has given broad discretion to the commissioner to determine the factors which define a permanent resident."[54] Permanent residency requires physical presence and an intent to remain in Alaska.[55] We reasoned in a divorce case that the intent to remain permanently must mean an intent to remain indefinitely because many Alaskans likely intend to retire elsewhere and thus would not otherwise be considered residents.[56] The same reasoning applies in the PFD context.

■ "[T]he Department must be able to reasonably define statutory terms to insure that the permanent fund is protected for the legitimate claims of permanent residents."[57] In *Brodigan v. State, Department of Revenue*, a PFD case in which the department's regulation governing allowable absences for medical treatment was challenged, we stated that "[b]ecause the Department must administer the PFD program and apply the statutory standard, the commissioner needed to decide the meaning of 'medical treatment' [as used in AS 43.23.095(8)(D)]."[58] We determined that the department's regulation defining the term was consistent with the statute even though it was more restrictive than the statute.[59]

Thus, we have accorded the department broad authority in defining statutory terms, determining eligibility, and administering the PFD program. It is clear that we have allowed the commissioner to define statutory terms more restrictively in its regulations in order to further the goals of the PFD program. We conclude in this case that it is within the delegated authority of the commissioner to define the term "lawfully admitted for permanent residency in the United States" found in the PFD statute more

broadly than the federal definition in order (1) to avoid unconstitutionality and (2) to be consistent with the requirement of legal presence coupled with the requisite intent to remain in Alaska.

5. *Some legal aliens can form the requisite intent to remain in Alaska because they are not precluded from doing so under federal law.*

■ A central question in this case is whether aliens not lawfully admitted for permanent residence under federal law may still be able to form the intent to remain in Alaska that is necessary for PFD eligibility. We conclude that if they are able to form such an intent under federal law, then some are able to form the intent to remain in Alaska. A brief discussion of federal immigration law is necessary here to explain the significance of this conclusion and how we reach it.

In *Elkins v. Moreno*,[60] the United States Supreme Court characterized the Immigration and Naturalization Act (INA) as "a comprehensive and complete code governing all aspects of admission of aliens to this country."[61] The Court held that the INA divides aliens into two classes: (1) immigrant aliens, which includes every alien who does not fall within one of the categories listed in 8 U.S.C. § 1101(a)(15); and (2) non-immigrant aliens, which includes every alien who falls in a category listed in that section.[62]

*Elkins* noted that Congress explicitly conditioned admission for some groups of nonimmigrant aliens on an intent to not abandon their foreign residences:

Although nonimmigrant aliens can generally be viewed as temporary visitors to the United States, the nonimmigrant clas-

---

53. *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1129 (Alaska 1999) (quoting *Brodigan*, 900 P.2d at 733 n. 12); *see also Schikora v. State, Dep't of Revenue*, 7 P.3d 938 (Alaska 2000).

54. *Church*, 973 P.2d at 1129.

55. *See* AS 01.10.055; 15 AAC 23.143.

56. *See Perito v. Perito*, 756 P.2d 895, 898–99 (Alaska 1988).

57. *Brodigan*, 900 P.2d at 732.

58. *Id.*

59. *Id.*

60. 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978).

61. *Id.* at 664, 98 S.Ct. 1338.

62. *See id.*

sification is by no means homogenous with respect to the terms on which a nonimmigrant enters the United States. For example, Congress expressly conditioned admission for some purposes on an intent not to abandon a foreign residence or, by implication, on an intent not to seek domicile in the United States.[63]

However, Congress did not explicitly restrict *every* nonimmigrant alien class in this way.[64] For example, Congress did not impose this requirement on the "G–4" aliens involved in the *Elkins* case.[65]

*Elkins* viewed Congress's silence on the domicile issue as pregnant and interpreted this silence to mean that Congress was willing to allow such aliens to "adopt the United States as their domicile."[66] A nonrestricted alien who developed a subjective intent to stay indefinitely in the United States "would be able to do so without violating either the [INA], the [INS's] regulations, or the terms of his visa."[67]

This holding is significant to the case now before us because, if Congress has not precluded all aliens not admitted for permanent residence from forming the intention to remain indefinitely, Alaska law must recognize that possibility in establishing the requirements for permanent fund dividend eligibility. The Andrade class argued to the superior court that "federal law does not provide that certain categories of aliens are necessarily domiciled in the United States. Federal law either precludes them or does not preclude them from having domiciliary intent." We take this to mean that there is not uniformity of domiciliary status for all aliens not admitted for permanent residence. Given the Supreme Court's holding in *Elkins*,[68] this appears to be an accurate statement of the law.

Thus, Congress has not precluded some aliens not admitted for lawful permanent res-

idence (as defined in federal immigration law) from intending to remain indefinitely. We construe this lack of preclusion under federal law to mean that an alien who fits within that classification is able, for the purposes of PFD eligibility, to form the intent to remain in Alaska indefinitely.

> 6. *The term "an alien lawfully admitted for permanent residence" as used in the PFD eligibility statute does not incorporate the federal definition.*

■ The parties dispute whether the PFD eligibility statute incorporates the federal definition of "lawfully admitted for permanent residence" found in 8 U.S.C. § 1101(a)(20), which provides that

> [t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.[69]

The class argues that the statute must incorporate the federal definition because "[t]here is no rational way ... to interpret the phrase 'an alien lawfully admitted for permanent residence in the United States' ... other than by reference to federal law." According to the class, incorporation of the federal definition renders the PFD eligibility requirement in conflict with Federal law because not all legal aliens are precluded from forming the intent to remain, even though they are not lawfully admitted for permanent residence (as defined in the federal statute). Under their interpretation of the statute, aliens who are not precluded from forming the requisite intent to remain are impermissibly excluded from PFD eligibility.

The state concedes that the former implementing regulation was "too restrictive" and

---

63. *Id.* at 665, 98 S.Ct. 1338.

64. *See id.* at 666, 98 S.Ct. 1338.

65. 8 U.S.C. § 1101(a)(15)(G)(iv) (1999) which pertains to "officers, or employees of [certain] international organizations, and the members of their immediate families." For a discussion of the facts of *Elkins, see* text *infra* at 72–73.

66. *Elkins,* 435 U.S. at 666, 98 S.Ct. 1338.

67. *Id.*

68. *Id.* at 665–67, 98 S.Ct. 1338.

69. 8 U.S.C. § 1101(a)(20) (1999).

that incorporating the federal definition of "lawfully admitted for permanent residence" into the state statute renders it unconstitutional under the test stated in *Toll v. Moreno*.[70] In *Toll*, the Supreme Court held that a state regulation violates the Supremacy Clause if it both discriminates against aliens and imposes additional burdens not contemplated by Congress.[71] Thus, under *Toll* a restriction that categorically excluded nonrestricted nonimmigrants from PFD eligibility would be unconstitutional. However, the state argues that the agency has the authority to construe the language of subsection (a)(5)(B) more broadly than under federal law and in a manner that comports with *Toll*. We agree.

Given "the preeminent role of the Federal Government with respect to the regulation of aliens within our borders," [72] the legislature's use of the term "lawfully admitted for permanent residence in the United States" in AS 43.23.005(a)(5)(B) arguably makes the federal definition of these words applicable. However, the state statute in question does not regulate immigration; it regulates PFD eligibility. The different purposes of the statutes leads to our conclusion that the terms do not need to be defined in the same way.[73]

The state argues that its interpretation is consistent with legislative intent. According to the state, the legislative "history indicates that in adopting section (a)(5)(B), the main concern of the legislature was ... the possibility that illegal aliens would receive dividends. No discussion of the threshold requirement for dividend eligibility of *legal* aliens appears in the legislative history."

The Andrade class argues that because illegal aliens were the central focus in *Cosio*, this shows "that *all* legal aliens should receive a PFD regardless of their immigration status." We disagree. There is no basis for concluding that all legal aliens should be eligible to receive a PFD. Aliens have to be present in Alaska legally and be able to form the requisite intent to remain, like all other applicants. Once legal presence is established, then the department has authority to determine eligibility based on all relevant factors, including the ability to intend to remain.[74] In the case of legal aliens, a relevant factor is any restriction placed on them by virtue of their immigration status. If an alien is not precluded by federal law from forming the intent to remain indefinitely, then for the purposes of PFD eligibility, the department has the authority to construe that as meaning that an alien is considered able to form the requisite intent to remain in Alaska.

While the legislative history reveals concern regarding illegal aliens, the silence of the legislature with regard to legal aliens is ambiguous. The state and the class agree that "[n]o discussion of the threshold requirement for dividend eligibility of *legal* aliens appears in the legislative history." Thus, the class's claim that the statute must incorporate the federal definition is not mandated by legislative history.

The state also argues that "a close reading" of the state statute "supports the conclusion that the legislature did not intend to incorporate federal law when defining the phrase 'lawfully admitted for permanent residence in the United States.'" The state contends that because subsections (a)(5)(C) and (D) specifically incorporate federal law [75] and subsection (a)(5)(B) does not, it can be inferred that the legislature did not intend for subsection (a)(5)(B) "to be construed under federal immigration law." However, the legislature's failure to use "under federal

70. *See* 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982).

71. *Id.* at 12–13, 102 S.Ct. 2977.

72. *Id.* at 10, 102 S.Ct. 2977.

73. *See Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 155 (Alaska 1994) (noting that state statute that does not rely on federal scheme does not need to be construed *in pari materia* with federal statute).

74. *See* AS 43.23.015(a) ("The commissioner shall consider all relevant circumstances in determining the eligibility of an individual.").

75. *See* AS 43.23.005(a)(5)(C) (referring to "an alien with refugee status under federal law"); AS 43.23.005(a)(5)(D) (referring to "an alien that has been granted asylum under federal law").

law" in subsection (a)(5)(B) is ambiguous, and does not establish legislative intent either way regarding incorporation of the federal definition.

We conclude that the department has the authority to define "lawfully admitted for permanent residency in the United States" differently than the federal government. And we do not construe the PFD eligibility statute as categorically excluding from PFD eligibility those aliens who are not precluded from forming the intent to remain indefinitely. Instead, we hold that AS 43.23.005(a)(5)(B) requires, for PFD eligibility, that an alien be legally present and able to form the requisite intent to remain in Alaska.

### 7. *Alaska Statute 43.23.005(a)(5)(B) does not violate the Supremacy Clause.*

When a state statute is challenged under the Supremacy Clause, the analysis starts "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." [76] It is undisputed that the power to regulate immigration is an exclusively federal power.[77] But the Supreme Court "has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." [78] The Supreme Court has also noted that its review of the INA had not revealed "any specific indication in either the wording or the legislative history of the INA that Congress intended to preclude even harmonious state regulation touching on aliens in general." [79]

The tests set forth by the Supreme Court in *DeCanas v. Bica*[80] and *Toll v. Moreno*[81] provide the framework for analyzing whether the provisions of AS 43.23.005(a)(5) are preempted by federal law. *DeCanas* involved a provision of the California Labor Code that prohibited an employer from knowingly employing "an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." [82] The question in that case was whether the provision was unconstitutional as an attempt to regulate immigration or because it was preempted under the Supremacy Clause by the INA.[83] While the Supreme Court referred in its opinion to "illegal aliens," the Court stated that the term was meant to "appl[y] to aliens who would not be permitted to work in the United States under pertinent federal laws and regulations." [84] Thus, the aliens involved in *DeCanas* were not necessarily "illegal aliens" in the sense that they were not legally present in the United States. Using the tests discussed below, the Court concluded on the record before it that the California provision neither regulated immigration nor violated the Supremacy Clause.[85]

The *DeCanas* Court asked first whether the state statute is a regulation of immigration. If yes, it is invalid.[86] The second question is whether the "complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress." [87] "Federal regulation . . . should not be deemed preemptive of state regulatory

76. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

77. *See DeCanas v. Bica*, 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976).

78. *Id.* at 355, 96 S.Ct. 933.

79. *Id.* at 358, 96 S.Ct. 933.

80. *Id.*

81. 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982).

82. *DeCanas*, 424 U.S. at 352, 96 S.Ct. 933.

83. *Id.* at 353, 96 S.Ct. 933.

84. *Id.* at 354 n. 2, 96 S.Ct. 933.

85. *Id.* at 363, 96 S.Ct. 933.

86. *Id.* at 354–56, 96 S.Ct. 933.

87. *Id.* at 357, 96 S.Ct. 933 (internal quotation marks omitted).

power in the absence of persuasive reasons either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained."[88] If the first two tests are satisfied, then the final question is whether the state legislation is "nevertheless unconstitutional because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the INA."[89]

We conclude that all of the *DeCanas* tests are satisfied in this case. First, the statute is not a regulation of immigration. The state legislation in question is clearly limited to the administration of Alaska's unique economic benefit program, the permanent fund dividend. Second, there has been no ouster of state power to regulate PFD eligibility by Congress. The PFD is a purely local phenomenon, subject to regulation by the State of Alaska. Here, the nature of the subject matter is eligibility for a PFD. Congress has never unmistakably ordained that Alaska could not regulate its PFD program. And third, given (1) the presumption of constitutionality under Alaska law, (2) the different purposes of the federal and state statutes, (3) the broad authority delegated to the department to define statutory terms to further the purposes of the PFD program, (4) the PFD eligibility requirements of legal presence and an intent to remain indefinitely in Alaska, and (5) the lack of legislative intent to exclude eligible legal aliens, we conclude that the PFD eligibility statute does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in regulating immigration because the statute can be construed in a manner that includes nonrestricted legal aliens in PFD eligibility. This conclusion is based on two premises: first,

our interpretation of AS 43.23.005(a)(5)(B) as requiring of aliens legal presence in Alaska coupled with the requisite intent to remain; and second, an interpretation of AS 43.23.005(a)(5)(B) by the department that recognizes the ability of nonrestricted nonimmigrant aliens to form the requisite intent to remain in Alaska and thus meet a threshold eligibility requirement.[90]

 Even if the tests set forth in *DeCanas* are satisfied, under *Toll v. Moreno*[91] if a state regulation "discriminates against aliens lawfully admitted to the country [the regulation] is impermissible if it imposes additional burdens not contemplated by Congress."[92] Thus, if nonrestricted legal aliens are not precluded from having the intent to remain indefinitely under federal law, but they are nonetheless facially excluded from PFD eligibility by state statute, then the state statute would discriminate against nonrestricted aliens and impose a burden on them not contemplated by Congress. The parties agree that if the statute incorporates the federal definition, it violates the Supremacy Clause. However, we concluded above that the PFD eligibility requirement in AS 43.23.005(a)(5)(B) of being "lawfully admitted for permanent residence" does not incorporate the federal definition of that term. Rather, the state may accord the statute a broader definition than under federal law for the purposes of defining PFD eligibility. We now consider whether the statute comports with the requirements of *Toll*. To do so we ask whether the statute categorically excludes legal aliens from PFD eligibility and thus discriminates based on alienage or imposition of an impermissible burden.

The *Toll* case had its genesis in *Elkins v. Moreno*.[93] The plaintiffs in *Elkins* were stu-

---

**88.** *Id.* at 356, 96 S.Ct. 933 (quoting *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)).

**89.** *Id.* at 363, 96 S.Ct. 933 (internal quotation marks omitted).

**90.** The expired emergency regulation may be adequate. However, because that regulation was not in effect at the time this action was commenced and because there is no regulation currently in effect, we will not at this time reach the

question of the constitutionality of the emergency regulation.

**91.** 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982).

**92.** *Id.* at 13, 102 S.Ct. 2977 (quoting *DeCanas*, 424 U.S. at 358 n. 6, 96 S.Ct. 933).

**93.** 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978).

dents who resided with and were financially dependent on "a parent who was a nonimmigrant alien holding a 'G–4' visa." [94] They alleged that the (state-operated) University of Maryland's policy of denying in-state tuition to the children of G–4 visa holders,[95] based on their inability to meet the Maryland domicile requirement of having a demonstrated intent to live permanently or indefinitely in Maryland, violated various federal laws and constitutional provisions, such as the Supremacy Clause and the Due Process Clause of the Fourteenth Amendment.[96] However, the *Elkins* Court did not decide whether the university's policy violated the Constitution. Instead, it remanded and certified to the Maryland Court of Appeals the question of whether G–4 aliens were incapable of establishing domicile in Maryland as a question of state law [97] on which there was no controlling precedent.[98] After the Court certified this question, the university adopted a clarifying resolution that basically attempted to justify its in-state tuition policy by referencing various "substantial purposes and interests," independent of the Maryland law of domicile.[99] The *Elkins* case returned to the Supreme Court after remand under the name *Toll v. Moreno.*[100]

*Toll* addressed the university's grant of preferential treatment for tuition purposes to students who had "in-state" status.[101] The university's policy allowed citizens and immigrant aliens to obtain in-state status if they could show they were domiciled within the state.[102] Nonimmigrant aliens were not eligible for such status, even if they were domiciled within Maryland.[103] The *Toll* Court considered whether the university's new policy, implemented after *Elkins*, violated the

Supremacy Clause.[104] The *Toll* Court stated that some of its previous decisions "stand for the broad principle that 'state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress.' " [105] The Court concluded that the university's policy violated the Supremacy Clause because it found that, insofar as the university policy barred domiciled G–4 aliens (and their dependents) from acquiring in-state status, "Congress [n]ever contemplated that a State, in the operation of a university, might impose discriminatory tuition charges and fees solely on account of the federal immigration classification." [106]

Our case is distinguishable from *Toll.* In *Toll,* the university expressly discriminated against legal aliens who were able to acquire domicile in Maryland. Here, there is no facially discriminatory policy or evidence of legislative intent to exclude nonrestricted nonimmigrant legal aliens from PFD eligibility. On the contrary, the legislative history leads us to conclude that the legislature intended that qualifying legal aliens be eligible for a PFD. If an alien's immigrant status provides relevant information as to his or her ability to intend to remain, then the commissioner may consider it. The commissioner and the department have corrected their previously unconstitutional interpretation of the language of AS 43.23.005(a)(5)(B) by repealing the former implementing regulation and by adopting an emergency regulation in an effort to comply with both federal law and the requirements of the PFD program. The construction of AS 43.23.005(a)(5)(B) set

---

**94.** *Toll,* 458 U.S. at 4, 102 S.Ct. 2977.

**95.** *See* 8 U.S.C. § 1101(a)(15)(G)(iv).

**96.** *See Elkins,* 435 U.S. at 650–653, 98 S.Ct. 1338.

**97.** *See id.* at 668, 98 S.Ct. 1338.

**98.** *See id.* at 662, 98 S.Ct. 1338.

**99.** *Toll,* 458 U.S. at 7, 102 S.Ct. 2977.

**100.** *Id.* at 9, 102 S.Ct. 2977.

**101.** *See id.* at 3.

**102.** *See id.*

**103.** *See id.*

**104.** *See id.* at 9–19, 102 S.Ct. 2977.

**105.** *Id.* at 12–13, 102 S.Ct. 2977 (quoting *DeCanas v. Bica,* 424 U.S. 351, 358 n. 6, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976)).

**106.** *Id.* at 17, 102 S.Ct. 2977.

forth here and as presented by the state [107] comports with *Toll* because the statutory requirement of legal presence and the ability to intend to remain does not discriminate on the basis of alienage or impermissibly impose additional burdens not contemplated by Congress. We therefore reverse the superior court's decision and hold that the statute does not violate the Supremacy Clause.

### 8. The PFD eligibility requirement of AS 43.23.005(a)(5)(B) does not violate equal protection.

The superior court ruled that AS 43.23.005(a)(5) violates the Equal Protection Clauses of the United States and Alaska Constitutions. We disagree.

Although the class properly raised the equal protection claim in its declaratory judgment action based on the now-repealed regulation, we conclude that the PFD eligibility statute, AS 43.23.005(a)(5)(B), does not violate the federal or state equal protection rights of class members. "Where there is no unequal treatment, there can be no violation of the right to equal protection of law. In the absence of any evidence of disparate treatment, there is no basis for an equal protection claim...." [108] Because we conclude that the PFD eligibility requirement for aliens found in AS 43.23.005(a)(5)(B) requires legal presence coupled with the ability to intend to remain, we hold that the statute does not facially exclude nonrestricted legal aliens or make a discriminatory distinction and thus does not violate equal protection.

### 9. The implementing regulation in place when this action was commenced, 15 AAC 23.153 (repealed), was unconstitutional.

The superior court did not address, and was not required to address, the constitution-

ality of either the repealed regulation or the emergency regulation. The parties do not dispute that the now-repealed implementing regulation, 15 AAC 23.153, in effect when this action was commenced, was unconstitutional. We agree that the repealed regulation was unconstitutional because it improperly excluded some legal aliens who were not precluded under federal law from forming the intent to remain required for PFD eligibility.

During the pendency of this litigation, the department reassessed its interpretation of AS 43.23.005(a)(5)(B) to comport with federal and state law. [109] We recognize that the constitutional challenge raised by the class instigated the department's reassessment and that the class was thus successful on the main issue of the action—that nonrestricted nonimmigrant aliens may be able to form the intent to remain in Alaska indefinitely and thus meet that PFD eligibility requirement. [110]

The department enacted an emergency regulation that appears to construe the language of AS 43.23.005(a)(5)(B) in accord with both the PFD requirements and federal immigration law; however, the emergency regulation was allowed to expire. Because the emergency regulation was not in effect when the Andrade's PFD application was denied, because the parties did not argue the validity of the emergency regulation below, and because the emergency regulation is not now in effect, we decline to decide its constitutional validity at this time.

### D. The Superior Court Did Not Err in Concluding that the PFD Eligibility Statute, AS 43.23.005(a)(5)(B), Does Not Constitute National Origin Discrimination under the Alaska Human Rights Act.

The class cross-appeals the superior court's conclusion that exclusion of the class

---

**107.** The state said that "we now know that nonrestricted nonimmigrants are, in fact, lawfully admitted to the United States on an indefinite basis. Thus, those nonrestricted nonimmigrants who make Alaska their home are eligible for a dividend under section (a)(5)(B)."

**108.** *Matanuska–Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 397 (Alaska 1997).

**109.** *See, e.g.*, 1999 Informal Op. Att'y Gen. No. 63–99–0225 (April 30, 1999).

**110.** *See, e.g.*, *Bowman v. Blair*, 889 P.2d 1069, 1075 (Alaska 1995); *Alaska Placer Co. v. Lee*, 553 P.2d 54, 63 (Alaska 1976).

members from PFD eligibility is not discrimination based on national origin under the Alaska Human Rights Act, AS 18.80.255.[111] The Andrade class argues that the denial of benefits based on citizenship is national origin discrimination because aliens must come from another country.

The state argues that this issue was not properly before the superior court because a jurisdictional prerequisite was not complied with in that plaintiffs failed to file a copy of the complaint with the Human Rights Commission, as required by AS 18.80.145.[112] In the alternative, the state argues that no claim of national origin discrimination was established.

We conclude that the matter was properly before the superior court and affirm the superior court's conclusion that AS 43.23.005(a)(5) does not discriminate on the basis of national origin.

1. *The national origin discrimination question was properly before the superior court.*

■ The superior court has jurisdiction "over all causes of action arising under the provisions of AS 18.80." [113] However, when a human rights action is brought, the plaintiff shall serve a copy of the complaint on the State Commission for Human Rights.[114] But nothing in AS 18.80 supports a conclusion that the requirement of giving the Human Rights Commission a copy of the complaint is a jurisdictional requirement for maintenance of human rights claims in superior court.

■ Furthermore, the state did not object to this procedural failure until it filed its brief on appeal to this court. The class makes note of that failure and argues that the objection should therefore be considered waived. We agree with the class and consider the objection waived.[115]

2. *The superior court did not err in concluding that the PFD eligibility statute did not constitute national origin discrimination.*

■ The superior court concluded that the state's exclusion of the class members under AS 43.23.005(a)(5) from PFD eligibility does not constitute "discrimination within the scope of the State's Civil Rights Act." The superior court found that "[o]n its face, AS 43.23.005 does not discriminate based on the place where the applicant was born, or the country that their ancestors came from." The class contends that "[i]f someone is not a U.S. citizen, then they *must* have been born in another country." The class goes on to argue that "[t]he state's eligibility scheme is in effect a restriction based upon U.S. citizenship or near U.S. citizenship, with noncitizen adults excluded," and that this is impermissible as national origin discrimination. We agree with the superior court's rejection of this argument.

The Alaska Legislature gave the term "national origin" a brief definition in AS

---

**111.** AS 18.80.255 provides in relevant part:
It is unlawful for the state or any of its political subdivisions (1) to refuse, withhold from, or deny to a person any local, state, or federal funds, services, goods, facilities, advantages, or privileges because of race, religion, sex, color, or national origin. . . .

**112.** AS 18.80.145 provides, in part, that
(a) When an action is brought under AS 22.10.020(i), the plaintiff shall serve a copy of the complaint on the commission. Upon timely application, the commission may intervene as a party to the action as a matter of right. If the commission certifies in writing to the court that it is presently investigating or actively dealing with the act, practice, or policy of the defendant giving rise to the cause of action, the court shall, at the request of the commission, defer proceedings for a period of not more than 45 days or such extended period as the court may allow; except that the court may enter an order or injunction if necessary to prevent irreparable injury to the plaintiff;
. . . .
(d) If the commission does not intervene or file a certificate and conduct a hearing as provided in this section, the court has complete jurisdiction of the case, notwithstanding the provisions of AS 18.80.280.
AS 22.10.020(i) provides in part that "[t]he superior court is the court of original jurisdiction over all causes of action arising under the provisions of AS 18.80."

**113.** AS 22.10.020(i).

**114.** AS 18.80.145.

**115.** *See Ellingstad v. State, Dep't of Natural Resources,* 979 P.2d 1000, 1007 (Alaska 1999).

18.80.300(10): " 'national origin' includes ancestry." This definition has remained unchanged since the statute was enacted.[116] There is no legislative history to shed light on what the legislature meant by this definition.

In the context of federal employment discrimination, the Supreme Court has defined national origin discrimination as being based on "the country where a person was born, or, more broadly, the country from which his or her ancestors came." [117] The Supreme Court recognized that "an employer might use a citizenship test as a pretext to disguise what is in fact national-origin discrimination" and that such discrimination is prohibited.[118]

The term is also defined in 29 C.F.R. § 1606.1 which provides in part that national origin discrimination is defined broadly "as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." Another federal regulation provides that "where citizenship requirements have the purpose or effect of discriminating against an individual on the basis of national origin, they are prohibited by Title VII." [119]

The Alaska Attorney General issued an opinion in 1975 that concluded that questions about alienage or citizenship on employment applications had the effect of discriminating on the basis of national origin and were thus legally impermissible.[120]

■ Based on our review of the Alaska definition, the federal definition, and existing interpretations of the term, we conclude that national origin discrimination is properly defined as discrimination based on an individual's (or his or her ancestor's) place of origin, or cultural characteristics associated with

specific places of origin. This comports with the broad protection against discrimination required by Alaska law.[121]

We hold that AS 43.23.005(a)(5) does not discriminate based on cultural characteristics, ancestry, or country of origin. Nor does the statute have the effect of national origin discrimination. Under the PFD eligibility requirements some aliens are eligible, some are not, regardless of ancestry, country of origin, or cultural characteristics.[122] This does not constitute national origin discrimination and class plaintiffs are not entitled to damages or back dividends on this basis. We therefore affirm the conclusion of the superior court on this issue.

## V. CONCLUSION

The superior court did not abuse its discretion when it dismissed the exhaustion of administrative remedies defense. We AFFIRM the denial of the state's motion for summary judgment on that issue.

We AFFIRM certification of the class because the superior court did not abuse its discretion in that matter.

We also AFFIRM the superior court's denial of the class's motion for summary judgment on the Human Rights claim because we agree that the PFD eligibility requirement for legal aliens under AS 43.23.005(a)(5) does not constitute national origin discrimination.

We REVERSE the superior court's conclusion that AS 43.23.005(a) is unconstitutional. The PFD eligibility requirement for legal aliens found in AS 43.23.005(a)(5)(B) survives constitutional challenge because, for the purposes of PFD eligibility, the term "lawfully admitted for permanent residence" means that an alien must be legally present in Alaska and be able to form the requisite intent to

---

**116.** See ch. 117, § 6 SLA 1965.

**117.** Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973).

**118.** Id. at 92, 94 S.Ct. 334.

**119.** 29 C.F.R. § 1606.5(a).

**120.** 1975 Formal Op. Att'y Gen. No. 6.

**121.** See University of Alaska v. Tumeo, 933 P.2d 1147, 1152 (Alaska 1997).

**122.** Concluding that AS 43.23.005 does not discriminate on the basis of national origin does not mean that there are no circumstances in which an individual PFD applicant might have a colorable claim under AS 18.80. But that question is not now before us.

remain in Alaska. The statute is not a regulation of immigration, does not conflict with federal law, and does not stand as an obstacle to the accomplishment of the full purposes of Congress in regulating immigration. Nor does it discriminate based on alienage or impose additional burdens on aliens not contemplated by Congress.

Finally, the superior court's grant of partial summary judgment to the class enjoined the department from enforcing any statutes or regulations "that would exclude legal aliens and their children from PFD eligibility based upon a legal immigration status that is not inconsistent with having an intent to reside indefinitely in this state." The class was entitled to that ruling as a matter of law and it was the proper remedy for the former implementing regulation, 15 AAC 23.153 (repealed), which the parties agree was unconstitutional. We therefore AFFIRM the superior court's grant of summary judgment insofar as it enjoined any conduct that improperly excluded otherwise eligible legal aliens, and for this reason we AFFIRM the superior court's determination that the plaintiff class prevailed in this litigation.