Peter EAGLE, Appellant,

v.

STATE of Alaska, DEPARTMENT
OF REVENUE, Appellee.

No. S–12004.

Supreme Court of Alaska.

March 2, 2007.

Peter Eagle, pro se.

Chris C. Poag, Assistant Attorney General, David W. Márquez, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

Peter Eagle, a former Navy servicemember, claims that he was a resident of Alaska for purposes of receiving a 2003 Permanent Fund Dividend (PFD). The Permanent Fund Dividend Division of the Department of Revenue (the Division) rejected his application because he failed to rebut the statutory presumption that his absence from Alaska for more than five years indicated an intent not to return to the state. Eagle primarily argues that the Federal Soldiers' and Sailors' Civil Relief Act (the SSCRA) preempts Alaskan law by preserving his residency for the purpose of PFD eligibility. He also argues that the Alaska PFD residency requirements violate his right to equal protection. We hold that the SSCRA does not preempt the PFD's residency requirements and that Eagle waived any equal protection arguments by failing to raise them below. We therefore affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

Peter Eagle lived in Juneau from kindergarten until he graduated from high school in 1982. After high school, he attended college in Oregon but spent his summers in Alaska. In 1986 Eagle joined the Navy and spent the next sixteen years outside Alaska. During his sixteen years of active service, Eagle at most visited Alaska on five occasions, making two-week trips in 1988, 1989, 1991, 1994, and 1999. From 1986 to 1994, Eagle received PFDs under the "active duty" allowable absence of AS 43.23.008(a)(3).[1] In 1995 the Division rejected Eagle's PFD application, finding that he had failed to overcome a presumption that after five years of absence from Alaska, he was no longer a resident. Eagle did not appeal the decision and did not apply for a PFD from 1996 to 2002. He claims that "the burdens of his active duty Naval service" made it infeasible for him to do so.

In 2002 the Navy discharged Eagle, and in October he returned to Alaska. He applied for a PFD in 2003. The Division denied his application on the grounds that he had lost his state residency before 2002 and had been

---

**1.** AS 43.23.008(a)(3) provides: "[A]n otherwise eligible individual who is absent from the state during the qualifying year remains eligible for a current year permanent fund dividend if the individual was absent ... serving on active duty as a member of the armed forces of the United States...."

absent during that year for more than 180 days.[2] At Eagle's request, the Division conducted a formal hearing at which Eagle argued that the SSCRA protected his status as an Alaska resident for purposes of the PFD.[3] The Division rejected his argument that the SSCRA applied. It then determined that he was ineligible for a 2003 PFD, giving particular weight to 15 AAC 23.163(h)(2), which directs courts to presume that an applicant does not have an intent to return to Alaska if the applicant has been physically present in Alaska for less than a total of thirty days in the past five years.

Eagle subsequently appealed the Division's decision to the superior court, again arguing that the SSCRA preserved his residential status. The superior court affirmed the Division's decision and this appeal followed. Eagle asks that this court (1) reverse the superior court's decision by finding that he is eligible for a 2003 PFD, (2) strike down 15 AAC 23.163(f), which exempts congressmen and their staffers from the five-year-absence presumption, as discriminatory and unlawful, and (3) reinstate Eagle's eligibility for the 1995–2002 PFDs.

Eagle has represented himself in all stages of this case.

**2.** AS 43.23.005(a)(3) requires that an applicant have been a resident for the entire qualifying year to be eligible for a PFD, which in this case meant that Eagle had to have been a resident of Alaska for all of 2002 (the qualifying year) to be eligible for a 2003 PFD. 15 Alaska Administrative Code (AAC) 23.163(b) (2003) states that applicants who are absent from Alaska for more than 180 days are not eligible if they were not a resident for at least 180 days before departure from Alaska. Because Eagle returned to Alaska in October 2002, he was not a resident during that qualifying year under 15 AAC 23.163(b) and thus was ineligible for a 2003 PFD.

**3.** Soldiers' and Sailors' Civil Relief Act (SSCRA), 50 U.S.C. app. §§ 501–96 (2003) (protecting the residency of servicemembers for tax and voting purposes).

**4.** *Anderson v. State, Dep't of Revenue*, 26 P.3d 1106, 1108–09 (Alaska 2001); *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

**5.** *Anderson*, 26 P.3d at 1109 (alteration in original) (quoting *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1127 (Alaska 1999)).

## III. DISCUSSION

We review the merits of an administrative determination independently.[4] Eagle does not dispute any facts. Rather, he challenges the constitutionality and wisdom of the Division's scheme for determining Alaskan residency. We apply a substitution of judgment standard to issues of law not within an agency's expertise, such as statutory interpretation, but "do 'not substitute [our] judgment for that of the agency with respect to the efficacy of [a] regulation nor review the wisdom of a particular regulation.' "[5] Constitutional issues present questions of law, which are subject to independent review.[6]

### A. The SSCRA Does Not Preempt Alaska's PFD Residency Requirements with Respect to Servicemembers.

Eagle argues that provisions of the SSCRA on the residence and domicile of those in the military protect his status as an Alaska resident for purposes of PFD distribution. He relies on two sections of the SSCRA to support his argument: section 571, which protects servicemembers' residency for tax purposes,[7] and section 595, which protects servicemembers' residency for voting purposes.[8] Eagle's argument seems to

**6.** *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1023 (Alaska 2005).

**7.** 50 U.S.C. app. § 571 provides: "A servicemember shall neither lose nor acquire a residence or domicile for purposes of taxation with respect to the person, personal property, or income of the servicemember by reason of being absent or present in any tax jurisdiction of the United States solely in compliance with military orders."

**8.** 50 U.S.C. app. § 595 provides:

For the purposes of voting for any Federal office ... or a State or local office, a person who is absent from a State in compliance with military or naval orders shall not, solely by reason of that absence—

(1) be deemed to have lost a residence or domicile in that State, without regard to whether or not the person intends to return to that State;

(2) be deemed to have acquired a residence or domicile in any other State; or

(3) be deemed to have become a resident in or a resident of any other State.

be that these provisions establish that a servicemember retains his residence or domicile for all purposes, not just taxation or voting; thus, Alaska wrongfully found that he was not an eligible resident of Alaska for PFD purposes. Eagle also points to a U.S. Government payroll form entitled the "State of Legal Residence Certificate" to support the proposition that one's domicile and residence are the same and that a person can have only one domicile.[9] He interprets this form to hold that the burden of showing that a servicemember's residency has changed rests on the challenging party, in this case, the State.

Eagle misunderstands the narrow scope of federal preemption of state law in our system of dual sovereignty. We recently outlined the jurisprudence on federal preemption in *State v. Dupier:*

> Under the Supremacy Clause of the federal constitution, state laws that interfere with federal laws are invalid. Federal laws can preempt state laws in the following three ways: (1) if Congress expressly declares that state law is preempted; (2) if Congress demonstrates an intent to occupy a field exclusively; and (3) if there is an actual conflict between federal and state law. Preemption may be either express or implied. When considering preemption, courts start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.[10]

We conclude that it was not the clear and manifest purpose of Congress in enacting the SSCRA to preempt state regulations affecting the determination of residency for the purpose of an economic benefit such as Alaska's PFD.

There is no indication in the SSCRA that Congress wished to preempt state determination of servicemembers' residence beyond the narrow instances of taxation and voting. Section 571 is meant to prevent servicemembers from being taxed in both their home state and the location where the military requires them to serve.[11] Although one might argue that the PFD falls within the rubric of taxation, we have described the PFD as "an economic benefit,"[12] because money is paid by the government to an individual. Taxation, on the other hand, is an economic detriment because the flow of money is in the opposite direction. Of course, under some tax systems tax credits might result in an overall negative tax rate in favor of some individuals. But the difference between such cases and the PFD is that tax credits are directly part of a government revenue-raising program, and the PFD is not.

Any preemptive effect section 595 has is limited by its own language to "the purposes of voting for any Federal office ... or a State or local office."[13] There are no other provisions of the SSCRA that similarly protect servicemembers' residency for other purposes. Nor is Congress's regulation of state residency for the purposes of taxation and voting so pervasive as to conclude that it meant for federal law to occupy the entire field of state residency determination regard-

**9.** State of Legal Residence Certificate, http://dcp.psc.gov/PDF_ docs/dd2058.pdf (last visited Nov. 7, 2006).

**10.** 118 P.3d 1039, 1049 (Alaska 2005) (citations and quotations omitted); *see also English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (discussing the same three ways in which federal laws can preempt state laws).

**11.** *E.g., Sullivan v. United States,* 395 U.S. 169, 180, 89 S.Ct. 1648, 23 L.Ed.2d 182 (1969) (holding that this provision was "enacted ... to prevent multiple State taxation of the property") (citations and quotations omitted); *California v. Buzard,* 382 U.S. 386, 393, 86 S.Ct. 478, 15 L.Ed.2d 436 (1966) (holding that this provision's purpose in "broadly freeing the nonresident serviceman from the obligation to pay property and income taxes was to relieve him of the burden of supporting the governments of the States where he was present solely in compliance with military orders"); *United States v. County of Champaign, Ill.,* 525 F.2d 374, 377 (7th Cir.1975) ("The statute was enacted to protect servicemen from the risk of double taxation occasioned by their temporary duty in a state other than their domicile.").

**12.** *State, Dep't of Revenue v. Andrade,* 23 P.3d 58, 71 (Alaska 2001).

**13.** 50 U.S.C. app. § 595. This provision was added in 2003.

ing servicemembers.[14] Instead, the fact that the SSCRA singles out only two specific instances in which it applies to the residency of servicemembers indicates that it was meant to apply only to those instances.

Eagle's reliance on the State of Legal Residence Certificate is also misplaced. This document is not federal law.[15] Its purpose is to help servicemembers declare their legal residence for the exclusive purpose of state income taxation.[16] As such, it simply works in conjunction with section 571 to prevent servicemembers from being taxed in both their home state and the state of their military residence.

Last, there is no conflict between the SSCRA and Alaska's residency requirements for PFD distribution. While it is understandable how some of the language in the SSCRA and the State of Legal Residence Certificate could lead a person in Eagle's position to believe that *all facets* of his Alaskan residency would be preserved while he served in the Navy, this turns out not to be the case. As discussed above, the relevant provisions of the SSCRA protect a servicemember's residency only for purposes of taxation and voting. Alaska's PFD is neither; it is "an economic benefit that Alaska residents are entitled to receive if they meet certain eligibility requirements."[17] We have "repeatedly stated that 'the residency requirement for PFD eligibility may differ from other residency requirements.'"[18] Therefore, Eagle could be a resident of Alaska for purposes of taxation and voting under the SSCRA, but not a resident of Alaska for purposes of PFD eligibility.

### B. Eagle Waived His Equal Protection Argument by Not Raising It Below.

In his appeal before this court, Eagle also asks that this court "[s]trike down 15 AAC 23.163(f) as discriminatory and unlawful." 15 AAC 23.163 covers "allowable absences" for PFD eligibility. 15 AAC 23.163(f) states that applicants who have claimed an "allowable absence" under AS 43.23.008 for more than five consecutive years are presumed not to have the intent to return to Alaska. To rebut this presumption, the applicant must provide "documentation that demonstrates to the department's satisfaction an intent at all times during the absence or absences to return to Alaska and remain indefinitely in Alaska."[19] Eagle objects to the fact that 15 AAC 23.163(f) expressly exempts members of the U.S. Congress and their staff from its five-year presumption. He seems to make two basic kinds of arguments against this regulation: that the congressional exemption violates his right to equal protection and that the absence of a similar exemption for servicemembers is bad public policy.

The State argues that Eagle waived his equal protection argument by not raising it at the administrative or superior court level. Because this issue was not properly raised, the State argues, the record was not developed at any level and the superior court did not address it in its order. Eagle claims that he brought up the disparity in treatment of PFD eligibility between members of Congress and military servicemembers both dur-

---

**14.** *Cf. Hines v. Davidowitz*, 312 U.S. 52, 69–74, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (holding that the extensive federal regulation in the area of immigration preempted a Pennsylvania law requiring alien registration).

**15.** The Supremacy Clause declares that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.

**16.** The State of Legal Residence Certificate, *see supra* note 9, states in relevant part:

The purpose of this certificate is to obtain information with respect to your legal resi-

dence/domicile for the purpose of determining the State for which income taxes are to be withheld from your "wages" as defined by Section 3401(a) of the Internal Revenue Code of 1954.... The Soldiers' and Sailors' Civil Relief Act protects your military pay from the income taxes of the State in which you reside by reason of military orders unless that is also your legal residence/ domicile.

**17.** *Andrade*, 23 P.3d at 71.

**18.** *Id.* at 71–72 (quoting *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1129 (Alaska 1999)).

**19.** 15 AAC 23.163(f).

ing the formal hearing before the Division and during oral proceedings before the superior court.[20]

■ This court will not consider on appeal new arguments that "(1) depend on new or controverted facts; (2) are not closely related to appellant's arguments at trial; and (3) could not have been gleaned from the pleadings, unless the new issue raised establishes plain error."[21] Because Eagle is representing himself, his briefs and pleadings should be held to "less stringent standards than those of lawyers."[22]

We find only two instances in the record in which Eagle makes statements that could in any way relate to his equal protection argument on appeal: once in his reply brief to the superior court and once in oral argument before the superior court. In his reply brief, Eagle very briefly mentions that members of Congress and their staffers are excepted from the five-year presumption. But this was in response to the State's argument that the Division's decision denying PFD eligibility was supported by 15 AAC 23.163(g)(6), which considers whether the applicant's absence was due to a career choice. Eagle appeared to have been offended by the State's claim that service in the military was a career choice like other civilian career choices and offered the congressional exception as an example of the State's "callous" attitude toward military service. In oral argument before the superior court, Eagle mentioned the congressional exception as a "side note" to his argument that the State had disregarded the supremacy of federal law. Again, Eagle used the congressional exception as an example of the State's disregard for the nature of military service.

Even liberally construed, neither instance provides any indication that Eagle was making or would make an equal protection claim. Rather, Eagle cursorily raised the difference in treatment between military servicemembers and members of Congress for illustrative effect in his preemption argument. Moreover, Eagle's equal protection argument is not closely related to the federal preemption argument based on the SSCRA that he made in his administrative appeals and before the superior court. Eagle's equal protection argument requires a balancing of the State's purpose in promulgating 15 AAC 23.163(f) against the individual interest impaired by this regulation,[23] whereas his preemption argument requires a determination of Congress's intent in enacting federal legislation.[24] Eagle thus waived his equal protection argument by failing to raise it below.

■ To the extent that Eagle is simply arguing that 15 AAC 23.163(f) is bad policy, he has chosen the wrong forum to air his grievances. We have stated that in administrative regulation cases like this that "[w]e do 'not … review the wisdom of a particular regulation.'"[25] This court is empowered to strike down regulations that violate the Alaska or Federal Constitution.[26] It is not the province of this court to determine whether or not a particular law or regulation is based

---

**20.** The record does not contain Eagle's arguments during his formal hearing before the Division.

**21.** *Price v. Eastham*, 128 P.3d 725, 731 (2006) (citations and quotations omitted).

**22.** *Id.* at 731–32.

**23.** See *Malabed v. N. Slope Borough*, 70 P.3d 416, 421 (Alaska 2003) (describing the three-part test used in equal protection cases: "[F]irst, we determine the weight of the individual interest impaired by the [law at issue]; second, we examine the importance of the purposes underlying the government's action; and third, we evaluate the means employed to further those goals to determine the closeness of the means-to-end fit.").

**24.** *See supra* text accompanying note 10.

**25.** *Anderson v. State, Dep't of Revenue*, 26 P.3d 1106, 1109 (Alaska 2001) (quoting *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1127 (Alaska 1999)).

**26.** *See, e.g., State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 915 (Alaska 2001) ("Without in any way attempting to invade the rightful province of the Legislature to conduct its own business, we have a duty, certainly since *Marbury v. Madison*, 5 U.S. 137 (1 Cranch), 2 L.Ed. 60 (1803), to adjudicate a claim that a law and the actions undertaken pursuant to that law conflict with the requirements of the Constitution.") (citations and quotations omitted).

on good policy.[27] The superior court correctly concluded that Eagle's policy arguments concerning the scheme of determining residence for PFD eligibility are "properly directed to the legislature, not the court."

## IV.  CONCLUSION

While Alaska owes Eagle a debt of gratitude for his naval service to the nation, it does not owe him a PFD for 2003. The Division's determination of military servicemembers' residency for the purpose of PFD distribution is not preempted by federal law. The provisions of the SSCRA on which Eagle relies protect servicemembers' residency only in regard to taxation and voting. Congress has not indicated that a servicemember's residency should be otherwise protected by federal law. We also conclude that Eagle waived any equal protection argument regarding 15 AAC 23.163(f) by failing to raise it below. We therefore AFFIRM the superior court's judgment.

---

**27.**  *See, e.g., State v. Campbell,* 536 P.2d 105, 111 (Alaska 1975) (holding that the constitution's separation of powers prohibits this court from enacting legislation or redrafting defective statutes).