Ian and Peggy HARROD, Appellants,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.

No. S–13586.

Supreme Court of Alaska.

July 22, 2011.

Ian and Peggy Harrod, pro se, Fairbanks, Appellants.

Stuart W. Goering, Assistant Attorney General, Anchorage, Michele Kane, Assistant Attorney General, and Daniel S. Sullivan, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

In 2005 the Department of Revenue denied Permanent Fund Dividends to Ian and Peg-

gy Harrod and their children. The Harrods appealed to the superior court where they argued that the Department lacked the authority to adopt residency requirements for the dividend program, that the denial of their applications violated both the United States and Alaska Constitutions, that their 2002 and 2003 Permanent Fund Dividend applications were wrongfully denied, and that the Administrative Law Judge who heard this administrative appeal abused his discretion by failing to provide a second hearing. The superior court affirmed the denial of the dividends. Having reviewed the parties' arguments and the record on appeal, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

In 1967 large oil reserves were discovered on state-owned land in Prudhoe Bay, resulting in a substantial increase in state revenue.[1] It was decided that a portion of income from oil reserves and other natural resources should be invested to maximize long-term revenue from the state's natural resources,[2] and in 1976 the Alaska Constitution was amended to establish the Alaska Permanent Fund.[3] The amendment requires 25% of the state's mineral income to be deposited into the Permanent Fund.[4]

In 1980, the legislature enacted a program to annually distribute a portion of the Permanent Fund's earnings directly to Alaska residents who meet certain eligibility requirements.[5] These earnings are distributed in the form of dividends (PFDs). The Department of Revenue (DOR) administers the dividend program.[6]

Ian and Peggy Harrod moved to Adak in 1987 in conjunction with Ian's military service. In 1992 Ian was reassigned to a location outside of Alaska but the Harrods continued receiving PFDs for the years 1993 through 1996 pursuant to the active duty "allowable absence" provision of AS 43.23.008(a)(3). This statute permits active

duty members of the military, and their families, to receive PFDs while stationed out of state as long as other conditions are met.

From 1997 through 2000, the Harrods continued to reside outside of Alaska and they did not apply for PFDs. In 2001, the Harrods applied for PFDs but their applications were denied. Because the Harrods had been absent from Alaska for more than five years, a presumption arose under 15 Alaska Administrative Code (AAC) 23.163(f) (2010) that the Harrods did not intend to return to Alaska and remain here. DOR applied this presumption, determined the evidence the Harrods offered did not rebut it, and denied their 2001 PFD applications. The Harrods pursued an informal appeal and DOR changed course. After a hearing, DOR decided that the Harrods did have the requisite intent to return to Alaska and it distributed PFDs to them for 2001.

The Harrods applied for PFDs in 2002 and 2003 but their applications were denied because DOR determined they failed to rebut the presumption that they did not intend to return to Alaska and remain in the state indefinitely. In arriving at this determination, DOR relied on evidence showing the Harrods had not moved back to Alaska since leaving in 1992 and that they made only infrequent and short return trips here in the five previous years. The Harrods pursued an informal administrative appeal of the 2002 denial under 15 AAC 05.010(b)(5) (2010) but DOR upheld its decision. The Harrods did not seek further review of the 2002 denial, did not appeal the 2003 administrative denial, and did not apply for PFDs in 2004.

The Harrods were absent from Alaska for 358 days in 2004, but they applied for PFDs in March 2005. They again claimed eligibility under the military and accompanying spouse "allowable absence provision" of AS 43.23.008(a)(3). DOR denied the Harrods' 2005 applications relying on the following

---

1. *Zobel v. Williams*, 457 U.S. 55, 56, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982).

2. *Id.* at 57, 102 S.Ct. 2309.

3. Alaska Const. art. IX, § 15.

4. *Id.*

5. AS 43.23.005(a); *Zobel*, 457 U.S. at 57, 102 S.Ct. 2309.

6. AS 37.13.040.

facts: (1) the Harrods were denied PFDs in 2002 and 2003 because they failed to overcome the presumption that they no longer intended to return to and remain in Alaska; (2) the Harrods had not returned to Alaska to establish residency after their 2002 and 2003 applications were administratively denied; and (3) the Harrods had only spent a total of 14 days in Alaska over two visits in the five years prior to 2005. DOR cited these facts as support for its conclusion that the Harrods were not Alaska residents for PFD eligibility purposes because they did not have the requisite intent to return to Alaska and remain in the state.

The Harrods filed an informal administrative appeal of the 2005 denial. To rebut the presumption in 15 AAC 23.163(f), they claimed they maintained "paper ties" to Alaska during their absence and that DOR had previously awarded them dividends under similar circumstances. DOR considered the Harrods' arguments, but it upheld its denial of the 2005 applications, concluding the Harrods severed their residency in Alaska prior to the qualifying year (2004) and failed to reestablish their residency for PFD eligibility purposes. DOR's decision was based on: (1) the 2002 and 2003 denials of the Harrods' PFD applications; (2) the Harrods' extended absence from Alaska for more than five years; (3) the failure to rebut the presumption that, after a five-year absence, they did not intend to return to and remain in Alaska; and (4) the failure to file applications for PFDs in 2004. DOR observed that even if the Harrods had applied for dividends in 2004, their applications likely would have been denied.

The Harrods appealed to the Office of Administrative Hearings, where an Administrative Law Judge (ALJ) affirmed DOR's decision.[7] The ALJ reasoned that DOR's denial of the Harrods' 2002 PFD applications

established that they were not Alaska residents for PFD purposes after 2001 and that they had not reestablished Alaska residency since that time. The ALJ relied on the doctrine of collateral estoppel to establish the Harrods' ineligibility for PFDs in 2002 and 2003, without relitigation of that issue. The ALJ ruled that the Harrods would have had to reestablish residency to obtain PFDs after that time. The Commissioner of DOR adopted the ALJ's decision and order in January 2007 and the superior court affirmed the Commissioner's decision in March 2009. In doing so, the superior court only reached the ALJ's rulings that the 2002 and 2003 denials were binding, the Harrods had not reestablished residency, and the denial of the Harrods' request for a second administrative hearing before the ALJ. The superior court decided the Harrods' challenges to DOR's authority to establish PFD eligibility requirements and to the constitutionality of the residency requirements were "not germane" to the issues raised in the Harrods' appeal.

The Harrods now appeal to our court, arguing that the previous denials of their 2005 applications were in error. Having considered the Harrods' arguments, we affirm the denial of the Harrods' 2005 PFD applications.

## III. STANDARD OF REVIEW

■■■ We do not defer to the superior court's decision when it sits as an intermediate appellate court.[8] Issues of statutory interpretation ordinarily raise questions of law that do not involve agency expertise; under these circumstances we apply an independent judgment standard of review seeking to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[9] Constitutional issues are questions of law subject to independent review.[10]

---

7. The ALJ granted a hearing on the appeal, but the Harrods later requested a second hearing to question DOR's representative. The request for a second hearing was denied.

8. *State, Pub. Emps.' Ret. Bd. v. Morton*, 123 P.3d 986, 988 (Alaska 2005) (citing *State, Dep't of Natural Res. v. Greenpeace, Inc.*, 96 P.3d 1056, 1061 (Alaska 2004)); *Anderson v. State, Dep't of Revenue*, 26 P.3d 1106, 1108–09 (Alaska 2001).

9. *Temple v. Denali Princess Lodge*, 21 P.3d 813, 815 (Alaska 2001).

10. *Eagle v. State, Dep't of Revenue*, 153 P.3d 976, 978 (Alaska 2007) (citing *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1023 (Alaska 2005)).

## IV. DISCUSSION

The program for distributing PFDs has specific rules for: (1) applying for PFDs; [11] (2) establishing and maintaining residency for PFD purposes; [12] and (3) maintaining residency for PFD purposes while on allowable absences from Alaska.[13] At the administrative level, the Harrods contested the basis for DOR's decision that they failed to establish residency for PFD purposes. But on appeal to our court, their brief included arguments that DOR lacked the authority to establish residency requirements for PFD eligibility and that their constitutional rights were violated by DOR. It appears the ALJ may have heard these arguments, but he did not reach them. The arguments were definitely presented to the superior court, but the superior court expressly declined to reach them. Because it appears from the record that the Harrods' constitutional challenges and challenges to the authority of DOR may have been raised at the administrative level, and because these arguments were certainly raised at the superior court level, we consider each of the Harrods' arguments in the decision we enter today.[14]

### A. The Alaska Department Of Revenue Has Authority To Determine Residency For Purposes Of Permanent Fund Dividend Eligibility.

### 1. PFD eligibility does not depend on an applicant's domicile or citizenship.

■ The Harrods' brief on appeal first argues that the right to establish citizenship in the United States or any of the 50 states or territories of the United States rests solely with the individual. The Harrods maintain that only individuals can change political associations and that neither the national government nor any local government has the power to sever its ties with them. To support this position, the Harrods rely on two United States Supreme Court cases, but neither of them is applicable to this case.

The Harrods cite *Afroyim v. Rusk*[15] for the proposition that individuals, and not states, possess the right to determine citizenship in "any of the 50 states or various territories." *Afroyim* was a Polish immigrant who obtained United States citizenship and then voted in an election for Israel's Knesset.[16] The Department of State denied Afroyim's application to renew his passport, claiming that he lost his citizenship by voting in a foreign election.[17] The United States Supreme Court reversed, reasoning:

[T]he Fourteenth Amendment was designed to, and does, protect every citizen of this Nation against a congressional forcible destruction of his citizenship, whatever his creed, color, or race. Our holding does no more than to give to this citizen that which is his own, a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship.[18]

The Court's holding in *Afroyim* pertains to issues of United States citizenship, not state residency. When DOR determined that the Harrods were not residents of Alaska for purposes of PFD eligibility, it did not deprive the Harrods of their United States citizenship in violation of the Fourteenth Amendment.

The Harrods also cite *Mitchell v. United States*[19] in support of their argument that individuals, not states, have the power to

---

11. *See, e.g.,* 15 AAC 23.103 (2010) (application generally); 15 AAC 23.113 (2010) (application on behalf of a child); 15 AAC 23.123 (2010) (application on behalf of a disabled, incompetent, or other adult).

12. 15 AAC 23.143 (2010).

13. 15 AAC 23.163.

14. *See DeNardo v. Calista Corp.,* 111 P.3d 326, 330 (Alaska 2005) (quoting *Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987)) ("We have held that 'the pleadings of pro se litigants should be held to less stringent standards than those of lawyers.'

This proposition reflects a policy against finding unintended waiver of claims in technically defective pleadings filed by pro se litigants.").

15. 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967).

16. *Id.* at 254, 87 S.Ct. 1660.

17. *Id.*

18. *Id.* at 268, 87 S.Ct. 1660.

19. 88 U.S. 350, 21 Wall. 350, 22 L.Ed. 584 (1874).

sever residency. *Mitchell* addressed contracts made during the United States Civil War and specifically addressed whether the plaintiff in that case was domiciled in the United States or the Confederate States.[20] The primary question was not the state in which Mitchell was a resident but rather the country in which he was domiciled. The decision denying the Harrods' PFD applications was based entirely on the conclusion that they were not residents of the State of Alaska for dividend eligibility purposes under the definitions adopted by the legislature. Thus, *Mitchell* is not helpful to the Harrods' position.

### 2. The Alaska Department of Revenue has the authority to create eligibility requirements for PFDs that exceed those in AS 01.10.055.

■ The Harrods next argue that DOR lacks authority "to create eligibility requirements for Alaska residency exceeding those set by AS 01.10.055."

Alaska Statute 01.10.055 establishes the requirements for Alaska residency, but this statute allows the DOR to establish through regulation a longer minimum period for "maintaining a principal place of abode in the state" or require "other proof" to demonstrate "the intent to remain in the state indefinitely and to make a home in the state."[21] Alaska Statute 43.23.015(a) requires DOR to adopt regulations "for determining the eligibility of individuals for permanent fund dividends." We have repeatedly held that "the residency requirement for PFD eligibility may differ from other residency requirements"[22] and that "[t]he legislature has given broad discretion to the commissioner to determine the factors which define a permanent resident."[23] The Harrods' argument that DOR lacks the authority to establish PFD eligibility requirements that are more stringent than the residency requirements in AS 01.10.055 is incorrect.

### B. It Was Not Error To Decide The Harrods Did Not Qualify For PFDs In 2005.

■ In their administrative appeal, the Harrods argued that DOR erred when it decided that they were not eligible for PFDs in 2005. In reaching this decision, DOR first considered that the Harrods' 2002 and 2003 applications had been denied, and then considered whether the Harrods had reestablished eligibility since that time.

Alaska Statute 43.23.095(7) defines "state resident" for PFD eligibility purposes:

> [A]n individual who is physically present in the state with the intent to remain indefinitely in the state under the requirements of AS 01.10.055 or, if the individual is not physically present in the state, intends to return to the state and remain indefinitely in the state under the requirements of AS 01.10.055.

---

20. *Id.* at 352–53.

21. AS 01.10.055 provides:

> (a) A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.
> (b) A person demonstrates the intent required under (a) of this section
>   (1) by maintaining a principal place of abode in the state for at least 30 days *or for a longer period if a longer period is required by law or regulation;* and
>   (2) by providing other proof of intent as may be required by law or regulation, which may include proof that the person is not claiming residency outside the state or obtaining benefits under a claim of residency outside the state.
> (c) A person who establishes residency in the state remains a resident during an absence

from the state unless during the absence the person establishes or claims residency in another state, territory, or country, or performs other acts or is absent under circumstances that are inconsistent with the intent required under (a) of this section to remain a resident of this state. (Emphasis added).

22. *Eagle v. State, Dep't of Revenue,* 153 P.3d 976, 980 (Alaska 2007) (quoting *State, Dep't of Revenue v. Andrade,* 23 P.3d 58, 71–72 (Alaska 2001)) (internal quotation marks omitted); *see also Schikora v. State, Dep't of Revenue,* 7 P.3d 938, 941–42 (Alaska 2000); *Brodigan v. State, Dep't of Revenue,* 900 P.2d 728, 733 n. 12 (Alaska 1995).

23. *Andrade,* 23 P.3d at 72 (quoting *Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1129 (Alaska 1999)) (internal quotation marks omitted); *see also State, Dep't of Revenue v. Cosio,* 858 P.2d 621, 625 (Alaska 1993).

Generally, applicants for PFDs must attest that they were present in the State of Alaska during a qualifying year,[24] but the legislature has directed that PFDs shall be distributed to people who are absent from Alaska for certain allowable reasons.[25] Allowable absences include military service, absence due to status as the spouse or dependent of a military service member who is stationed out of state, and absence due to service as a member of the United States Congress.[26]

### 1. 15 AAC 23.163(f) establishes a rebuttable presumption that the Harrods were ineligible for PFDs five years after they left Alaska.

The Harrods argue that their absence from Alaska was due to Ian's service in the United States military and that this is an "allowable absence" for purposes of PFD eligibility.[27] We agree that military service is an "allowable absence" for purposes of PFD eligibility under AS 43.23.008(a)(3), but the grace period afforded by this exception is not without limitation. Because the Harrods' argument overlooks an important part of the PFD statutory and regulatory scheme, it ultimately fails.

The Harrods left Alaska in 1992 because Ian was assigned by the military to a location outside the state. They remained eligible for PFDs for several years thereafter because of the "allowable absence" provision in AS 43.23.008(a)(3) for military service members.

**24.** AS 43.23.005 requires DOR to determine whether a PFD applicant was a resident of Alaska for PFD eligibility purposes on the date of the dividend application and during the qualifying year.

**25.** AS 43.23.008.

**26.** AS 43.23.008(a)(3) and (9).

**27.** The Harrods' brief does not expressly include the argument that DOR erred when it determined they were ineligible during the 2004 qualifying year. We nevertheless consider this argument because: (1) it was the focus of the Harrods' arguments to the ALJ and in the superior court; (2) it was the focus of Ian's oral argument to our court; (3) the State did not argue that it was waived; and (4) pro per litigants are held to a less strict standard. *See Gilbert v. Nina Plaza Condo Ass'n*, 64 P.3d 126, 129 (Alaska 2003) ("It is well settled that in cases involving

But Alaska law only permits military service members who leave Alaska to continue claiming Alaska residency for PFD eligibility purposes for five years. After that, 15 AAC 23.163(f) creates a rebuttable presumption that service members who have not returned to Alaska are no longer residents for PFD purposes—they are presumed not to have the intention to return to Alaska and remain in the state indefinitely.[28]

We find no error in the ALJ's decision to rely on the doctrine of collateral estoppel to avoid relitigation of whether the Harrods were ineligible for PFDs in 2002 and 2003. 15 AAC 23.163(f) established a rebuttable presumption that the Harrods were ineligible for PFDs and it was undisputed that the Harrods did not return to Alaska during the 2004 qualifying year or otherwise reestablish their residency. The ALJ did not err by affirming the denial of the Harrods' 2005 PFD applications.

### 2. The Harrods' PFD applications for 2002 and 2003 were denied.

The Harrods' 2001 PFD applications were denied because they had been absent from Alaska for more than five years. The Harrods pursued an informal appeal of that decision, supplying evidence of the "paper ties" they had with Alaska such as maintaining a bank account and voter registration status here, and holding Alaska fishing and driver's licenses. Ian argued that unavoidable cir-

a pro [per] litigant the . . . court must relax procedural requirements to a reasonable extent.").

**28.** 15 AAC 23.163(f) provides:

An individual whose absence or combination of absences, under a provision of AS 43.23.008 other than AS 43.23.008(a)(9)-(10) and (13), . . . totals more than five consecutive years is presumed not to have the intent to return to Alaska and remain indefinitely in Alaska. In such a case, the individual is not eligible for a dividend payment unless the individual provides . . . documentation that demonstrates to the department's satisfaction an intent at all times during the absence or absences to return to Alaska and remain indefinitely in Alaska. 15 AAC 23.163(g) and (h) specify the factors DOR shall consider, and the weight to be given to the factors, when deciding whether an individual who has been absent from Alaska for more than five years has rebutted this presumption.

cumstances had prevented the Harrods from returning to Alaska for at least 30 days in the previous five years,[29] and he was successful in convincing a DOR hearing officer that they intended to return to Alaska and remain here indefinitely. The hearing officer awarded six PFDs to the Harrod family for the year 2001.

In this appeal, the Harrods argue that the same evidence they relied upon to overcome the rebuttable presumption in 2001 must also be sufficient to overcome the presumption for 2005. We disagree; the ALJ's decision to affirm the denial of the Harrods' 2005 applications did not rely on findings regarding the sufficiency of the Harrods' "paper ties" to Alaska. Instead, the ALJ decided the Harrods were not eligible for 2005 dividends because they were determined to lack residency status in 2002 and 2003, they did not appeal those decisions, and they did not reestablish residency in subsequent years.[30]

The Harrods' 2002 and 2003 PFD applications were denied due to the rebuttable presumption found in 15 AAC 23.163(f). The Harrods pursued an informal appeal for 2002, but DOR denied it. DOR's written notice of denial included notification that the Harrods had 30 days to file a Request for Formal Hearing appeal. A form for requesting such a hearing was enclosed with the DOR's written decision. It gave notice that the Harrods had 30 days to request further

review,[31] but the Harrods did not respond.[32] The 2002 denial became a final decision 30 days later.[33]

### 3. It was not error to rely on the doctrine of collateral estoppel to establish that the Harrods were ineligible for PFDs in 2002 and 2003.

The doctrine of collateral estoppel generally prevents the relitigation of an issue previously adjudicated.[34] In this case, the ALJ relied on the doctrine of collateral estoppel to establish that the Harrods were ineligible for PFDs in 2002 and 2003. The Harrods briefly objected to the application of the doctrine during oral argument, but we find no error in the ALJ's decision to rely on it.

To determine the applicability of the doctrine of collateral estoppel, this court engages in a three-part inquiry.[35] First, collateral estoppel must be asserted against the party, or one in privity with the party, to the first action.[36] The Harrods and DOR were the parties to the 2002 administrative appeal and to the denial of the 2003 application; this satisfies the first prong of the three-part collateral estoppel inquiry.

Second, the issue to be precluded from relitigation must be identical to that decided in

**29.** The presumption in 15 AAC 23.163(f) is usually deemed unrebutted if applicants have not returned to Alaska for at least 30 days within the previous five years. *See* 15 AAC 23.163(h). The hearing officer who considered the Harrod's 2001 administrative appeal found that they were "23 days shy of the 30–day benchmark."

**30.** The argument that it was an abuse of discretion for DOR to determine that the Harrods' "paper ties" to Alaska did not overcome the presumption in 15 AAC 23.163(f) also fails. The regulatory scheme adopted by DOR makes clear that the burden to overcome this presumption rested with the Harrods. The Harrods have not shown that DOR considered factors other than those specified in 15 AAC 23.163(g) or that DOR improperly weighed the factors specified by regulation.

**31.** 15 AAC 05.030(a) (2010):

The department will hold a formal hearing if a request for a formal hearing conforming to the requirements of 15 AAC 05.010(a) is filed. If a

request for a formal hearing follows an informal conference, it must be filed within 30 days after the date the informal conference decision is issued, and must be filed in accordance with the appeal form provided by the department.

**32.** At the administrative hearing the Harrods claimed that they appealed the 2002 and 2003 denials. The ALJ gave the Harrods roughly 45 days to provide proof that they filed appeals in those years, but the Harrods did not file proof of appeal.

**33.** *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 85 P.3d 458, 462 (Alaska 2004) (citing *Blue Hen Lines, Inc. v. Turbitt*, 787 A.2d 74, 78 (Del.2001)).

**34.** *Latham v. Palin*, 251 P.3d 341, 345 n. 10 (Alaska 2011) (internal citations omitted).

**35.** *Id.* at 344 n. 4.

**36.** *Id.*

the first action.[37] Here, the ALJ applied the doctrine to preclude relitigation of the Harrods' PFD eligibility for the years 2002 and 2003. These are precisely the same issues resolved by the Harrods' 2002 informal administrative appeal, and by the denial of their 2003 applications. The identical nature of the issues satisfies the second prong of the three-part collateral estoppel test.

Third, the doctrine of collateral estoppel requires that the issue to be precluded from relitigation must have been resolved by a final judgment on the merits.[38] This court has held that "[p]rinciples of finality may be applied to the decisions of administrative agencies if, after case-specific review, a court finds that the administrative decision resulted from a procedure that seems an adequate substitute for judicial procedure and that it would be fair to accord preclusive effect to the administrative decision."[39] An informal appeal allows parties to present arguments and facts to contest the denial and results in a written decision.[40] This court has also held that collateral estoppel may be applied to an administrative decision if the decision is one "rendered pursuant to an exercise of primary jurisdiction."[41] DOR has primary jurisdiction to adjudicate PFD appeals under AS 43.23.015(g), and our review of the record convinces us that the doctrine of collateral estoppel is appropriately applied to the 2002 and 2003 denials. Because the doctrine of collateral estoppel allowed the ALJ to determine that the Harrods were ineligible for PFDs in 2002 and 2003, the ALJ correctly concluded that the Harrods must reestablish Alaska residency in order to be eligible to receive PFDs.

### 4. The Harrods did not return to Alaska during the 2004 qualifying year.

At oral argument before our court, the Harrods argued that a person who establishes residency in Alaska is presumed to maintain that status during absences from the state unless the person claims residency elsewhere (which the Harrods did not do) or the person performs other acts or is absent under circumstances that are not consistent with the intent required by AS 01.10.055 to remain a resident of Alaska. Five years after their 1992 departure from Alaska, a rebuttable presumption arose that the Harrods did not intend to return and remain here indefinitely.[42] Because the Harrods did not establish residency for PFD purposes in Alaska during the 2004 qualifying year and were not able to show that their absence was for an allowable reason under the applicable statutory scheme, DOR did not err when it denied the Harrods' 2005 PFDs.

### C. The Allowable Absence For Members Of Congress And Their Staff Is Not A Violation Of The Equal Protection Clause Of The Alaska Constitution.

The Harrods argue that 15 AAC 23.163(f) violates the Alaska Constitution's equal protection clause. This regulation, in conjunction with the "allowable absence" provisions in AS 43.23.008(9)-(10) allow members of Congress and their staff to qualify for PFDs even though they may be physically absent from the state for more than 180 days, and even though their "allowable absence" may extend for more than five years. The Harrods claim that any individual with any absence for any reason should be treated the same for permanent fund eligibility purposes.

We have held "[a] party raising a constitutional challenge to a statute bears the burden of demonstrating the constitutional violation. A presumption of constitutionality applies, and doubts are resolved in favor of

---

37. *Id.*

38. *Id.*

39. *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n, Inc.,* 152 P.3d 460, 468 (Alaska 2007) (quoting *State, Child Support Enforcement Div. v. Bromley,* 987 P.2d 183, 192 (Alaska 1999)).

40. 15 AAC 05.020(a)-(b) (2010).

41. *Holmberg v. State, Div. of Risk Mgmt.,* 796 P.2d 823, 825 (Alaska 1990) (citing *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 9 n. 15 (Alaska 1979)).

42. 15 AAC 23.163(f).

constitutionality." [43]

We have adopted a "flexible 'sliding scale' test" for reviewing equal protection claims.[44] First, we determine "what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review." [45] Second, we examine "the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest." [46] Third, "an evaluation of the state's interest in the particular means employed to further its goals must be undertaken." [47]

We have previously held that PFDs are not "basic necessities" or a "fundamental right." [48] Instead, "[a PFD] is merely an economic interest and therefore is entitled only to minimum protection under our equal protection analysis." [49] Restrictions on economic interests are reviewed at the "low end of the sliding scale." [50] Our review is therefore limited to considering whether this regulation was designed to achieve a legitimate governmental objective and whether it bears a fair and substantial relationship to accomplishing that objective.[51] At this level of review, we do not determine whether a regulation "is perfectly fair to every individu-al to whom it is applied." [52] We have reviewed and upheld the purpose and means served by PFD eligibility schemes in numerous cases.[53]

Here, DOR argues that the goal of 15 AAC 23.163(f) is to ease the administrative burden of processing PFD applications by decreasing paperwork of applicants whose jobs require proof of Alaska residency or where proof can be obtained through other means. The state processes more than 600,000 PFD applications each year.[54] Reducing the burden of individually examining PFD applications is a legitimate governmental objective, and allowing people who are serving in Congress some—of whom are elected to terms exceeding five years [55]—to establish residency by proof of their employment, without having to individually determine whether each applicant has a subjective intent to return to Alaska, bears a fair and substantial relationship to accomplishing the objective of easing the burden of processing PFD applications. The Harrods have not shown that the "allowable absence" provision for Alaska's congressional delegation violates their right to equal protection.

### D. The Harrods Do Not Have Standing To Challenge AS 43.23.005(a)(4).

In addition to being a state resident on the date of application,[56] maintaining state

---

**43.** *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001) (quoting *Baxley v. State*, 958 P.2d 422, 428 (Alaska 1998)).

**44.** *State v. Anthony*, 810 P.2d 155, 157 (Alaska 1991) (citing *State v. Erickson*, 574 P.2d 1, 11–12 (Alaska 1978)).

**45.** *Id.* (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 269 (Alaska 1984)).

**46.** *Id.* (quoting *Brown*, 687 P.2d at 269).

**47.** *Id.*

**48.** *Id.* at 158 (internal citations omitted).

**49.** *Id.* (citing *Wilson v. Municipality of Anchorage*, 669 P.2d 569, 572 (Alaska 1983)).

**50.** *Id.*

**51.** *See Schikora v. State, Dep't of Revenue*, 7 P.3d 938, 944–45 (Alaska 2000); *Underwood v. State*, 881 P.2d 322, 325 (Alaska 1994) (citing *State, Dep't of Revenue, Permanent Fund Dividend Div. v. Cosio*, 858 P.2d 621, 629 (Alaska 1993)).

**52.** *Eldridge v. State, Dep't of Revenue*, 988 P.2d 101, 104 (Alaska 1999).

**53.** *See, e.g., Schikora*, 7 P.3d at 944–45; *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1130–31 (Alaska 1999); *Brodigan v. State, Dep't of Revenue*, 900 P.2d 728, 734 n. 13 (Alaska 1995).

**54.** Dep't of Revenue, *Overview of the 2009 Calculation, available at* http://www.pfd.state.ak.us/forms/2009Forms/2009DividendCalculation.pdf.

**55.** U.S. Const. amend. XVII.

**56.** AS 43.23.005(a)(2).

residency during the entire qualifying year,[57] and meeting several other requirements,[58] Alaska law requires that applicants have "been physically present in the state for at least 72 consecutive hours at some time during the prior two years before the current dividend year"[59] to qualify for a PFD. The Harrods argue that AS 43.23.005(a)(4) places an unreasonable hardship solely on members of the Armed Forces because they are often "assigned to duty stations far from Alaska" and are unable to make it back to Alaska for 72 consecutive hours. This argument is unavailing because the Harrods were not denied 2005 dividends on the grounds they failed to meet the requirements of AS 43.23.005(a)(4). In fact, DOR never contested the Harrods' claim that they met the requirements of AS 43.23.005(a)(4).

■■■■■■ "Standing is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[60] The basis for determining whether a party has standing is "whether the litigant is a proper party to seek adjudication of a particular issue."[61] Although we give wide "access to judicial forums, a basic requirement of standing is adversity of interests."[62] Here, there is no adversity of interest that requires us to consider the constitutionality of AS 43.23.005(a)(4) because this statute was not the basis for denying the Harrods' PFD applications. The Harrods do not have standing to challenge the constitutionality of AS 43.23.005(a)(4).

### E. The Superior Court Correctly Rejected The Harrods' Attempt To Broaden Their 2005 Appeal To Include The 2002 And 2003 Denials.

■■■■ When the Harrods were denied PFDs in 2002 and 2003, they were informed of their right to appeal those decisions and the time period for filing those appeals. No evidence appears in the record indicating that the Harrods timely filed appeals for either year. In deciding the Harrods' appeal concerning their 2005 applications, the superior court properly denied the Harrods' arguments regarding their 2002 and 2003 applications because "they should have … raised [those arguments] in an appeal of the denial of those dividends."

### F. The Office Of Administrative Hearings Did Not Abuse Its Discretion By Not Allowing A Second Hearing.

■■■■ The Harrods requested a second hearing to question DOR's representative over issues already in the record. This request was denied because DOR's representative participated in the administrative hearing to defend DOR's position, not to serve as a fact witness. The Harrods claim that they were denied due process when the Office of Administrative Hearings denied their request for a second hearing. But the record shows that the Harrods received DOR's position statement prior to the first hearing and had the opportunity to submit their own evidence and testimony to rebut any of the assertions they believed to be inaccurate.[63] The Harrods have not shown that they were denied notice of the issues or an opportunity to be heard on the issues pertinent to the denial of their 2005 PFD applications. It was not error to deny the Harrods a second administrative hearing.

## V. CONCLUSION

For the forgoing reasons we AFFIRM the superior court's decision upholding the denial of the Harrods' 2005 PFD applications.

**57.** AS 43.23.005(a)(3).

**58.** AS 43.23.005(a)(1)-(7). ′

**59.** AS 43.23.005(a)(4).

**60.** *Law Project for Psychiatric Rights, Inc. v. State*, 239 P.3d 1252, 1255 (Alaska 2010) (quoting *Keller v. French*, 205 P.3d 299, 302 (Alaska 2009)) (internal quotation marks omitted).

**61.** *Id.* (citing *Trs. for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987)).

**62.** *Id.* (citing *Trs. for Alaska*, 736 P.2d at 327).

**63.** The State's position statement was submitted to OAH and the Harrods on September 5, 2006. The hearing did not take place until September 18, 2006.